JOYNFS, J.
The judgment in this case was rendered against Sawyer, who was defendant in the court below, upon a case agreed by the parties. He now contends that the judgment must be reversed, because it does not appear from the record that he had filed any plea. But this objection cannot be sustained. A case may be submitted to the court on a case agreed without a plea as well as with one, and it is sometimes done without either declaration or plea. The defect of pleadings is cured by the agreement. When there is a declaration and no plea, as in the present case, the plaintiff’s cause of action, as set forth in the declaration, is submitted to the court without reference to any particular form of de-fence, and the defendant is entitled to judgment, if the facts stated afford him a defence of which he might have availed himself under any form of pleading. When *339 the case is submitted after an issue is made up, the decision of the court is restricted to that issue.
Sawyer was contractor with the post office department for carrying the mail between the cities of Alexandria and Washington, and Fleming was the carrier employed by him. A mail bag containing a letter of Corse, in which there was an enclosure of bank notes belonging to him, was delivered to Fleming at the post office in Alexandria to be carried to Washington, and was lost by him on the route under circumstances which need not be ^stated. This is an action on the case brought by Corse against Sawyer to recover the value of the bank notes. The declaration contains three counts. The third which alleges that Fleming was not competent and trustworthy, and seeks to charge Sawyer on the ground that he had appointed an unfit person as carrier, is not sustained by the facts agreed, and may therefore be laid out of view. The first count alleges that the loss of the letter was occasioned by negligence and want of care on the part of Sawyer himself.
It is well settled that a public officer, or other person who takes upon himself a public employment, is liable to third persons in an action on the case, for any injury occasioned by his own personal negligence or default in the discharge of his duties. So that if the facts of this case establish that the loss of the letter was occasioned by the negligence or default of Sawyer himself, he is liable even though he should be considered as holding the position of a public officer or public agent, and whatever ma.y be the legal character of his relation to Fleming. 2 Kent, 610; Story on Agency, 320, 321; Nowell v. Wright, 3 Allen’s R. 166.
The second count alleges that the loss was occasioned by the negligence of Fleming as the agent and servant of Sawyer, employed by him to carry the mail according to his contract with the post office department. And here again it is clear, that if Fleming was merely the private agent and servant of Sawyer, Sawyer is liable to third persons for injury occasioned by his negligence in the performance of his duty, according to the maxim respondeat superior. And it is equally clear that the fact that Sawyer’s obligation to carry the mail arose under a contract with the government, and that he made no contract with Corse, is no answer to the present action, which is not founded on the contract, but on the breach of *duty. Winterbottom v. Wright, 10 Mees. & Welsb. 109; Burnett v. Lynch, 5 Barn. & Cres. 589 (12 Eng. C. L. R. 327); Farrant v. Barnes, 11 Com. B. R. N. S. 553 (103 Eng. C. L. R.); Marshall v. York Railway Co., 11 Com. B. R. 655 (73 Eng. C. L. R).
Sawyer contends however that Fleming is not his agent or servant, but the agent or servant of the government, and that as such he is liable for his own default. The leading case relied upon is Lane v. Cotton & al. decided in the year 1701, and reported in 1 Ld. Ray. R. 646, and in several other books. That was an action on the case against Cotton and Frankland, who were together the postmaster general of England, to recover the value of exchequer bills belonging to the plaintiff, which were abstracted from a letter deposited by him in the London post office to be transmitted by post. The letter was delivered at the office to one Breese who was appointed by the defendants to receive letters, who was removable by the'm, but who received his salary from the receiver general out of th'e revenues of the post office. In the opinion of the judges it was assumed that the bills were abstracted by Breese, though it was found by the special verdict that they were abstracted by a person unknown.
Three of the judges held that the defendants were not liable. Without going over all the grounds on which the decision was placed, it will be sufficient for the present purpose, to state thart it was placed, in part, upon the ground, that the post office establishment was an instrument of government, established for public convenience under the management and control of the defendants as officers of the government, and that Breese was himself an officer under the government, and liable as such for his' own acts, and that he was not the agent or servant of the defendants. Lord Holt dissented, but he only differed from the other judges upon the point ^whether Breese was to be regarded as the agent and servant of the defendants or not. See 15 East, 392.
The doctrine of this case was followed by Whitfield v. Le Despencer, Cowp. R. 754, and may be considered as well established in England. The same doctrine has been applied to (the case of a deputy or local postmaster, and his assistants duly appointed and qualified. These, in like manner, are regarded as agents and servants of the government, who are liable for their own acts and defaults, and not as agents and servants of the postmaster, for whose acts and defaults he is to answer. Schroyer v. Lynch, 8 Watts’ R. 453; Wiggins v. Hathaway, 6 Barb. S. C. R. 632; Dunlop v. Munroe, 7 Cranch’s R. 242; Bolan v. Williamson, 1 Brevard’s R. 181.
There has been some diversity of opinion in reference to this class of cases, but it has been rather as to the application of the principle on which they proceed, than as to the soundness of the principle itself. See Franklin v. Low & al., 1 John. R. 396; Maxwell v. McIlvoy, 2 Bibb’s R. 211; Jones on Bailments, 109.
Indeed, the principle which exempts a public officer from liability for the acts and defaults of his official subordinates appears to have been long recognized, and to be one of general application. Doctor & Student, Dialogue 2, chap. 42; Nicholson v. Morrissey, 15 East’s R. 384; Viscount Canterbury v. Attorney General, 1 Phillips’ R. 306.
The doctrine is thus stated in 1 American Leading Cases (3d ed.), 621: “With regard *340 to the responsibility of a public officer for the misconduct or negligence of those employed by or under him, the distinction generally turns upon the question whether the persons employed are his servants, employed voluntarily or privately and paid by him, and responsible to him, or whether they are his official subordinates, nominated perhaps *by him, but officers of the government; in other words, whether the situation of the inferior is a public officer or private service. In the former case the official superior is not liable for the inferior’s acts; in the latter he is.”
The exemption of public officers from responsibility for the acts and defaults of those employed by or under them in the discharge of their public duties, is allowed, in a great measure, from considerations of public policy. From like considerations it has been extended to the case of persons acting in the capacity of public agents, engaged in the service of the public, and acting solely for the public benefit, though not strictly filling the character of officers or agents of the government. Hall v. Smith, 2 Bingh. R. 156 (9 Eng. C. L. R. 357), Holliday v. St. Leonards, Com. B. (N. S.) R. 192 (103 Eng. C. L. R. 192).
The effort has been made, both in England and the United States, to extend the application of this principle of exemption so as to embrace every case of a municipal corporation, clothed' with authority or charged with a duty for the accomplishment of objects of a public nature and for the public, benefit. But it has been held that where the authority, though for the accomplishment of objects of a public nature and for the benefit of the public, is one from the exercise of which the corpqration derives a profit, or where the. duty, though of a public nature and for the public benefit, may fairly be presumed to have been enjoined upon the corporation in consideration of privileges granted to and accepted by it, the exemption does not apply. And the reason is that, in such cases, the corporation is not acting merely as an agent of the public and with a view solely to the public benefit, but that in the former it is pursuing its own interest and profit, and in the latter is executing a contract *for which it has received a consideration. Scott v. Mayor, &c., of Manchester, 2 Hurl. & Nor. R. 204; Weightman v. Corporation of Washington, 1 Black’s R. 39.
The books which have been cited show the grounds upon which this sort of exemption has been allowed, and the extent to which it has been generally carried. It ought not to be extended to other cases that do not fall clearly within the same reasons. I have seen no case in England, and none in this country, except two hereafter mentioned, in which such exemption has been allowed to a person undertaking by contract to perform work, or render service for the government, for a compensation to be paid to him, and with a view to his own profit, and where his subordinates are employed and paid by him, and liable to be dismissed at his pleasure. Such a contractor is in no just and proper sense, an officer of the government. And though he may be said to be, in a certain sense, an agent of the government, because he is engaged in working for the government, yet the laborers and others whom he employs under him, in the execution of his contract, cannot be said to be agents of the government, which does not know them, does not appoint them, does not control them, does not pa3r them, and has nothing to do with them. The cases above cited from 2 Hurl. & Nor. and 1 Black, show that he is not such a public agent as comes within the principle of Hall v. Smith, because he is working for his own profit, by fulfilling a contract which he has bound himself to perform, and for which he is to receive compensation.
In Collett v. London, &c., Railway Company, 16 Q. B. R. 984 (71 Eng. C. L. R.), the company had been required by the postmaster general to carry the mail under an act making it the duty of all railway companies to *'carry the mail when required to do so by the postmaster general. The plaintiff was an officer of the post office department accompanying the mail, whom it was the duty of the company to carry along with the mail. It was held that the plaintiff was entitled to recover against the company for an injury received by him through the negligence of the servants of the company in charge of the train.
Now this was a stronger case than that of a voluntary contractor, because the company could not refuse to undertake the service. Net it was not even contended at the bar that the company could be regarded as a public agent, exempt as such from liability to answer for the acts of their servants. If not such a public agent in respect to the officer in charge of the mail, how was the case different in respect to the mail, where both the mail and the officer were carried by virtue of the same duty, and for one and the same compensation?
The mail carriers, like all others in the service of the mail contractor, are selected and employed by him; are paid by him; are under his direction and control; enter into contract with him alone; work for his benefit and profit, and may be discharged by him at pleasure. What more is necessary to constitute the relation of master and servant? The case comes fully within the doctrine laid down by Chief Justice Best in Hall v. Smith, where he says: “The maxim of respondeat superior is bottomed on the principle that he who expects to derive advantage from an act which is done by another for him, must answer for any injury which a third person may sustain from it.” The fact that the law requires the carrier to be sworn before he enters on the discharge of his duties does not make him the agent or servant of the government, or affect, in any degree, his relation to the contractor. The safety of the mail and the regularity of *the service being dependent, in a great degree, upon *341 the fidelit3r of the carrier, the law requires that he shall he sworn, as a guaranty to that extent, of his fidelity, just as it required, for like reasons, that he shall he a white person, and of not less than a certain age. But if he is an agent of the government, for whose acts the contractor is not responsible, why does the law trust him without security, while it exacts security from the contractor, and that too when the contractor is, of necessity, a man of substance, which the carrier seldom or never is?
But if a carrier who has taken the oath required by the act of congress can be justly regarded as an agent and servant of the government, and no longer the mere agent and servant of the contractor, a carrier who has not taken the oath cannot be so regarded, because the act requires that he shall take the oath before he enters upon his duties. As Fleming had not taken the oath to perform his duties under Sawyer, therefore it is not competent for Sawyer to shield himself by alleging that Fleming was the agent and servant of the government ; and especially as it was a breach of duty in him to allow a person who had not been sworn to carrv the mail. Act March 3, 1825.
The ter ms of the contract between Sawyer and the department indicate clearly the understanding and intention of the parties to it, that the carriers whom Sawyer might employ would be his agents and servants, for whose acts he would be answerable. Saw'yer stipulates to take ■ the mail, and every part of it from, and deliver it, and every part of it, into the several post offices, and to deliver it into the post office at the place where the carrier stops at night, if one is there kept; and if no office is there kept, to lock it up in some secure place, ‘ ‘at the risk of the contractor. ’ ’ These were duties *which, from their nature, were to be performed .by the carrier. The provision that the mail when locked up at night shall be at the risk of the contractor, implies that the mail, while in the hands of the carrier, is at the risk of the contractor. The meaning is, that this risk shall continue, notwithstanding the mail has been locked up in a secure place, while the contractor will be relieved of the risk if the mail is deposited in . a post office where it will be in the care of the postmaster. The stipulation that Sawyer shall be responsible to the United States for any damage sustained through the unfaithfulness or -want of care of his carriers ; and the other, which precedes it, that he shall be “answerable” for them, in general terms, indicated as clearly as anything could, short of express words, that his carriers would be his agents and servants, for whose acts and defaults he would be responsible.
Two cases have been cited as expressly sustaining the proposition that a mail contractor is not responsible for the loss of mail through the misfeasance or negligence of a carrier. The first of them is Conwell v. Vorhees, 13 Ohio R. 523. The court stated the question to be whether the contractor was a common carrier or a public agent, although the declaration, in all the counts, set forth misfeasance and negligence, and not the liability of a common carrier, as the ground of action. The court held that he was a public agent, on the ground that he was engaged in the performance of a public service, under a contract with the government, and was therefore not responsible for the misfeasance or negligence of those employed b.y and under him. For the reasons already given, I do not think that this decision can be supported. The editor of American Reading Cases, vol. 1, p. 621, intimates the opinion that the case cannot be sustained on the ground upon which it was placed by the court, *and that if it can be sustained at all, which he evidently doubts, it must be on the ground that the carrier holds an official situation, and is really in the emplojement of the post office department.
The other case relied upon is Hutchins v. Brackett, 2 Foster’s R. 252. That case, though put upon the authority of Conwell v. Vorhees, was really decided upon a ground not relied upon, or even mentioned by the court in that case, to wit: that the carrier was a public agent, engaged in the performance of a public duty, and not the mere servant of the contractor. It will be observed that in Conwell v. Vorhees the judge uses “mail carrier” in the sense of “mail contractor” (p. 542, line 15), and that the judge in Hutchins v. Brackett misquotes the opinion in Conwell v. Vorhees by substituting “mail carrier” for “mail contractor,” where it occurs in the 24th line of p. 542. Thus the court in Conwell v. Vorhees is represented as holding that a mail carrier is a public agent, when, in point of fact, they held only that a mail contractor is such.
It thus appears that Hutchins v. Brackett affords no support to Conwell v. Vorhees, and I think it clear that Hutchins v. Brackett cannot be sustained on the ground upon which it was put. But however that may be, that ground, as I have shown, is not applicable to this case, in consequence of the fact that the carrier had not been duly sworn, and in consequence of the special stipulations of the contract between the contractor and the department.
It is objected that upon grounds of' public policy a contractor ought not to be held responsible for the misfeasance or negligence of a carrier, because to hold him so would operate as a discouragement to the taking of contracts for the transportation of the mail. Such considerations are of little weight when the rights and obligations *of the parties are clear on legal principles. But I do not perceive that there is any real ground for such an apprehension. A stage owner is liable for injury to a passenger, or for the loss of his baggage, occasioned by the fault of the driver. What greater hardship is there, if the stage owner is a contractor for carrying the mail, in holding him liable for the loss *342 of a letter in the mail, occasioned, likewise, by the fault of the driver. Indeed, a just regard for the interest of the public requires that the contractor should be held responsible; “for,” to adopt the language of Judge Ivivingston in reference to postmasters, mutatis mutandis, 11 such liability will greatly increase the security of the public, not only by preventing collusion between contractors and their carriers, but by rendering the former more circumspect in their choice, more watchful over their agents, and more attentive to taking bonds for their faithful conduct. It may, it is true, now and then fall hard on a contractor, but it is better it should be so than that individuals should be without remedy for injuries committed by their agents.” 1 John. R. 404.
It has been contended by the counsel for Corse that Sawyer is liable, under the first count of the declaration, on the ground that he was guilty of misfeasance and negligence of his duty in entrusting the mail to a carrier who had not taken the oath required by law, and Bishop v. Williamson, 2 Fairf. R. 495, is relied upon. In that case it was held that where a clerk in the post office had not taken the oath, the postmaster was guilty of a neglect of duty, which made him liable for a theft committed by the clerk, while in the absence of such neglect of duty he would not have been liable, on the principle of Bane v. Cotton & al. But the court did not hold t(iat the postmaster was liable, because of this neglect of duty, to answer, like an insurer, for all losses *that might have happened. If a loss had happened without any fault on the part of the clerk, The case does not hold that the postmaster would have been held liable. And so in this case, the fact that Sawyer allowed, Fleming, who had not been sworn, to carry the mail, did not render him liable at all events as an insurer. Judged according to what I have said heretofore, it had no effect upon his liability, for he was liable for a loss occasioned by Fleming’s- negligence, whether sworn or not. The decision in the. case, therefore, at last depends on the question whether the loss was occasioned by negligence and want of care on the part of Fleming.
The case agreed does not state whether the loss was or was not occasioned by negligence and want of care on the part of Fleming. Facts are stated, which have a bearing on that question, and the parties probably understood that the court would determine it by inference from the facts agreed, as was in fact done by the Circuit court. But a cáse agreed, called in the English practice a “special case,” is a substitute for a special verdict, and is subject to like rules. It must state facts, and not merely the evidence of facts ( 2 Tidd. 899), 'and it is not competent for the court to infer other facts from those stated, unless they result as a legal conclusion. If the parties intend that the court shall have authority upon a case agreed to make such inference, they must make an agreement to that effect, as is frequently, if not usually, done in England in making up a “special case.” 8 Ad. & El. 799; 7 M. & Gr. 295. This cannot be regarded as a case submitted to the court under the provision of the Code, ch. 162, § 9, because the record states that a “case was agreed” by the parties, “to be argued in lieu of a special verdict.” There is no alternative, therefore, but to reverse the judgment, set aside the case agreed, and award a venire de novo. 1 Rob. (old) Prac. *373-4. If upon the new trial it shall be found by the jury that the loss, for which the action is brought, was occasioned by the negligence and want of due care on the part of Fleming, in the carriage and preservation of the mail, the defendant in error will be entitled to recover. The degree of care which Fleming was bound to exercise was such as a man of ordinary prudence would ■have exercised about his own affairs, under like circumstances.
I am of opinion to reverse the judgment, with costs to the plaintiff in error, set aside the case agreed, and award a venire de novo.
The pther judges concurred in the opinion of Joynes, J.
Judgment reversed, and venire de novo awarded.