FREDERICK J. ROMER v. ST. PAUL CITY RAILWAY COMPANY.

January 6, 1899.

Nos. 11,400—(202).

### Street Railway—Car Barn in Residence District—Nuisance.

The defendant has for some years maintained and operated by public authority a street-car system, the motive power of which is electricity, in the city of St. Paul. As a necessary incident to such operation, it has maintained a car barn in a residence district, for the purpose of storing a part of its cars when not in use on the streets. The barn fronts on Ramsey street, with its sides abutting on Thompson and Smith avenues, respectively. It is not authorized to operate its system on these avenues, but it has, without any negligence in the premises, laid tracks and curves thereon, over which it runs its cars to and from the barn, from early in the morning until late at night. Such operation of its cars over such tracks and curves causes loud and disagreeable noises, whereby the rest and comfort of the plaintiff are disturbed, and the rental value of his real estate abutting on the street and avenues is materially reduced.

1. *Held*, construing the city ordinances granting to the defendant the right to operate its street-car system, that it is authorized so to lay and operate the tracks and curves on the avenues.

2. *Held*, further, upon the undisputed evidence, that the location of the barn is not an improper or unreasonable one, and that the acts of the defendant do not constitute a private nuisance for which the plaintiff can recover damages.

Action for $6,000 as damages done to plaintiff's property by defendant in operating its street-car barn and switches. A verdict was rendered for defendant. From an order of the district court for Ramsey county, Bunn, J., denying a motion for a new trial, plaintiff appealed. Affirmed.

*O. E. Holman*, for appellant.

The evidence in this case proved the existence of a nuisance within the meaning of G. S. 1894, § 5881. See also Wood, Nuis. (2d Ed.) §§ 612, 617.

That is a nuisance which annoys and disturbs one in the possession of his property, rendering its ordinary use or occupation phys-

ically uncomfortable to him. For such annoyance and discomfort the courts of law will afford redress by giving damages against the wrong-doer. Baltimore & P. R. Co. v. Fifth Baptist Church, 108 U. S. 317; Bohan v. Port, 122 N. Y. 18; Cogswell v. New York, 103 N. Y. 10; Mahady v. Bushwick, 91 N. Y. 148.

Where one maintains a nuisance upon his lands, which renders the premises of his neighbor disagreeable and uncomfortable, the proper measure of damages is the difference in the rental value, free from the effects of the nuisance and subject to it. Francis v. Schoellkopf, 53 N. Y. 152; Brakken v. Minneapolis & St. L. Ry. Co., 29 Minn. 41, 31 Minn. 45.

A nuisance may be at the same time both public and private. It is not the number who suffer, but the nature of the right affected which determines whether an action will lie. Those who live in the neighborhood, or who own property there, which is impaired in value by reason of the nuisance, may have their private actions since their damage is special. Aldrich v. Wetmore, 52 Minn. 164. The case at bar is to be distinguished from Adams v. Chicago, B. & N. Ry. Co., 39 Minn. 286, and Gundlach v. Hamm, 62 Minn. 42, where the alleged nuisance occurred while the cars and locomotives were engaged in the ordinary and usual business of transportation; while with the present case, the nuisance arises while the company is running its cars into or out of a round house—a purely private convenience. See Cogswell v. New York, supra; Bohan v. Port, supra; Carli v. Stillwater Street Ry. & T. Co., 28 Minn. 373; Newell v. Minneapolis, L. & M. Ry. Co., 35 Minn. 112. A street cannot be converted into a yard for the storage or deposit of cars to the injury of adjoining owners. Mahady v. Bushwick, supra.

Plaintiff claims that the defendant has no right nor authority whatever to operate any electric lines, tracks, curves or switches either upon Smith or Thompson avenues; that it is a trespasser on these streets, and that all the acts performed by it on them constitute a nuisance per se. None of the ordinances relied upon by defendant, towit, Ordinances Nos. 57, 1502 and 1227, confer upon it the right to do these acts which constitute a nuisance to plaintiff. See 23 Am. & Eng. Enc. (1st Ed.) 958, 960; Fanning v. Osborne, 102 N. Y. 441. Grants of a franchise are to be strictly construed

against the grantees. Fertilizing Co. v. Hyde Park, 97 U. S. 659; Com. v. Erie, 27 Pa. St. 339; Borough v. Stamford, 56 Conn. 381; City v. Concord, 65 N. H. 30; Burns v. Multnomah Ry. Co., 15 Fed. 177; State v. City, 58 N. J. L. 565. It is often correctly said that which the law authorizes cannot be a nuisance, but this has reference only to indictments or public prosecutions to abate the nuisance. It has not and cannot have reference to the property rights of individuals. Kabbe v. Village, 20 Misc. 477; Matthews v. Stillwater Gas & E. L. Co., 63 Minn. 493; Campbell v. Seamans, 63 N. Y. 568. As the statute gives the right to recover damages generally, any kind of damages resulting from the nuisance, whether direct or consequential, may properly be recovered in the action. Colstrum v. Minneapolis & St. L. Ry. Co., 33 Minn. 516.

*Munn & Thygeson,* for respondent.

The grant of the right to construct a railway carries with it as an incident the right to construct such turnouts and switches as may be necessary for the successful operation of the road. Mayor v. Houston, 84 Tex. 581.

As construed by this court, defendant has a right, under Ordinance No. 57, to construct and maintain its tracks upon those portions of Thompson and Smith avenues now occupied by it. Nash v. Lowry, 37 Minn. 261. Furthermore, the long-continued usage has raised a presumption of defendant's right, which casts the burden upon plaintiff to prove the contrary. Carson v. Central, 35 Cal. 325, 332.

The use of a street for street-railway purposes does not impose an additional burden upon the street for which the owner of the fee is entitled to recover. Carli v. Stillwater Street Ry. & T. Co., 28 Minn. 373; Newell v. Minneapolis, L. & M. Ry. Co., 35 Minn. 112.

Before plaintiff can recover he must show special or peculiar damage to himself. See Gundlach v. Hamm, 62 Minn. 42. Assuming plaintiff has sustained recoverable damage the proof leaves the amount so much in doubt that only nominal damages can be awarded. See Hubbard Spec. Mnfg. Co. v. Minneapolis Wood D. Co., 47 Minn. 393; Palmer v. Degan, 58 Minn. 505; Nickerson v.

Wells-Stone Mer. Co., 71 Minn. 230; Adams v. Chicago, B. & N. R. Co., 39 Minn. 286.

START, C. J.

This was an action for damages against the defendant for so maintaining and operating its street-car barn, and switching the cars in and out of it, as to constitute a nuisance, whereby the rental value of the plaintiff's real estate was impaired. At the close of the evidence the trial court directed a verdict for the defendant, and the plaintiff appealed from an order denying his motion for a new trial.

Competent evidence was introduced on the trial which was sufficient, taking the most favorable view of it for the plaintiff, to establish the following facts: Ramsey street and Smith and Thompson avenues are public streets within the city of St. Paul. The plaintiff has owned for some years, and still owns, the real estate described in the complaint, abutting upon the street and avenues named, which is occupied by dwelling houses and flats, as stated in the complaint.

The defendant is a corporation for the purpose of operating street-railway lines in the city of St. Paul, and has been so engaged since 1872, and for the past nine years it has been engaged in operating a general system of electric street railways in the city, composed of various lines; but each line is practically a part of every other line, so that a passenger boarding the car on any particular line can, by means of a transfer, required by ordinance, on payment of one fare, ride to any point on any other line embraced within the system. One of the lines of this system is operated along Ramsey street, and is known as the "Grand Avenue Line," which connects with or crosses all the other lines of the system.

The defendant is the owner of the land bounded by Ramsey street and Thompson and Smith avenues, upon which is located the car barn in question, which fronts on Ramsey street. It has been the owner of this land, and has maintained a car barn thereon, and operated its cars in and out of it, for many years. Since 1890 electricity has been the motive power used on the defendant's lines, and since that date it has operated on Ramsey street its Grand avenue

line in front of the plaintiff's property, at which point it has used a cross switch.

At the intersection of Ramsey street and Thompson avenue it has maintained and used two curves; at Smith and Ramsey, two other curves; on Thompson avenue, one curve; and on Smith avenue, five curves. It has maintained single spur tracks on Thompson and Smith avenues, extending a short distance beyond the barn, to facilitate the getting of its cars in and out of the barn. For about six years before the commencement of the action these curves and tracks were used for the purpose of switching electric cars and motors into and out of the barn. The barn floor is covered with tracks, on which the defendant has stored, on an average, 60 to 70 cars.

The location of the barn is practically a residence district, but it is within a few blocks of the business part of the city, with a lumber yard and several shops and stores in its immediate vicinity. The defendant's employees begin about four o'clock in the morning to take the cars out of the barn with the switching motor, and put them in position on the streets around the barn for distribution over the system. The cars are brought back in the evening, and are taken into the barn up to one o'clock in the morning.

In switching and distributing the cars a great noise is made, which is heard every morning from four to six o'clock, and again in the evening to one o'clock in the morning. The cars are taken out of the barn on Thompson avenue, and around the curves to Ramsey street, and run over the switches in front of the plaintiff's brick block. In running around the curves, the cars produce a sharp, grinding noise, and in making up the trains and pulling them out there is a bumping noise.

The alleged nuisance consisted of the loud and disagreeable noises caused by the defendant so switching its cars in and out of the barn, and running them over and across the curves on Thompson and Smith avenues, and over the switch in front of the plaintiff's block on Ramsey street; also, by the ringing of the gongs on the cars, the loud talking of the defendant's employees in charge of them, and the hammering in cleaning and repairing the cars in the street. The noises so produced were such as to disturb the rest and

comfort of the plaintiff, his tenants and other property owners in the vicinity of the car barn, by keeping them awake until late at night, and rousing them in the early hours of the morning. And, further, in the obstruction of the streets in front of plaintiff's property by permitting its cars to stand thereon, and by bringing coal, wood, sand and other material to be used in the operation of its electric lines, and unloading them upon the street at or near the barn. The rental value of the plaintiff's property has been in some measure reduced by the alleged nuisance.

It was substantially admitted by the plaintiff on the argument of this appeal that the defendant was not guilty of any negligence in the construction, maintenance and operation of its street-railway tracks, curves, switches, cars and barn at the point in question. It was also conceded on the trial that no negligence in the premises had been proven. As to the repairs of the cars in the street, the evidence shows that they were such as were occasionally necessary to put the cars in a condition to be moved. The obstruction of the streets by the cars was temporary. In short, there is no evidence tending to show that the temporary obstruction of the street by the cars, or the repairing of them therein, or the unloading of the material on the street, resulted in any special injury to the plaintiff, different from that sustained by the general public. Brakken v. Minneapolis & St. L. Ry. Co., 29 Minn. 41, 11 N. W. 124.

The real question, then, in this case, is whether the loud and disagreeable noises necessarily occasioned by the defendant in running its cars over its switches and curves in the streets, late at night and early in the morning, whereby the plaintiff is disturbed in the enjoyment of his property, is an actionable nuisance. The plaintiff, while conceding that the defendant has a right to maintain its car barn at the intersection of these streets, and to construct side tracks and switches on Ramsey street, claims it has no such right on Smith and Thompson avenues, and no legal right to switch its cars in and out of its barn over the tracks and curves upon the avenues.

In 1872 the city of St. Paul, by Ordinance No. 57, granted to the defendant the right to construct, maintain and operate, with animal power only, street-railway lines over and along certain of the streets of the city, including the streets here in question. The

defendant under this ordinance laid its tracks on Ramsey street, and also on Thompson and Smith avenues, adjacent to its barn at that point, and has ever since maintained them there.

In 1889 the city, by Ordinance No. 1227, granted to the defendant the right, and it was authorized, to construct, maintain and operate its street-railway system by cable, electric, pneumatic, or gas, power, at its option, in, over and along certain designated streets of the city, with all necessary side tracks, switches, poles, wires, conduits and appliances. Ramsey street was among those so designated, but neither Thompson nor Smith avenue was mentioned in the ordinance.

In 1891 the city, by Ordinance No. 1502, granted to the defendant authority so to construct and maintain poles, needful wires and apparatus, as to make connections with any of its electric power houses and stations, for the purpose of more fully perfecting its system upon certain streets and avenues therein named, and upon any streets on which the defendant then or thereafter might have its street-railway tracks.

We find in these ordinances no express grant to the defendant to maintain the curves and switches in the avenues in question for the purpose of taking its cars in and out of its barn, but the right to do so was given by necessary implication.

It is true that all public grants, unlike private ones, are construed strictly, and favorably for the grantor, the public. But it is equally true that where a grant is made for the benefit of the grantee, and also for the express accommodation and benefit of the public, everything which is reasonably proper and necessary (not simply convenient) to effect the essential objects of the grant passes by necessary implication. Otherwise the purpose of the grant would be seriously impaired, if not wholly defeated.

It is practically impossible for the defendant to operate its street-railway system without car barns in which to place its cars when not in use, for it would be intolerable to permit them to stand upon the streets. The only practical way to get the cars in and out of its barns is by the use of the usual motive power, and the use of tracks and curves on the streets adjacent to the barns. It would be a very narrow and technical construction of these ordinances to hold that

the defendant was authorized to lay switches and curves for the purpose of getting its cars in and out of its barns only on the streets upon which it was expressly authorized to operate its street-railway system.

Where, as in this case, its barn fronts on a street upon which it is authorized to and does operate its street-railway system, and it is reasonably necessary to take its cars in and out of the barn from the streets on each side of the barn, it has the right to do so, by virtue of the ordinances, although it has no right to operate its electrict lines thereon. Booth, St. Ry. § 95.

This conclusion, however, does not dispose of this appeal; for while it is true, as a general proposition, that what is authorized to be done by law cannot be a public nuisance, yet it may be a private nuisance as to individuals who are specially injured thereby. 2 Wood, Nuis. § 557.

The question still remains whether the loud and disagreeable noises occasioned by the running of the defendant's cars in and out of its barn over the curves and switches on the streets at the place and at the hours in question, although authorized by the city ordinances, constitute an actionable nuisance as to the plaintiff.

The answer to this question—there being no negligence in the case—depends on whether the location of the defendant's car barn was a reasonable and proper one, and whether the use of the streets at the times and in the manner they were used by the defendant in running its cars over the curves and switches, whereby the noises complained of were produced, was one of the reasonable uses or purposes for which the streets were acquired.

The plaintiff cites and relies on a class of cases to the effect that, where a party is carrying on a lawful business on his own land without negligence, yet if it is a business which is attended with loud and disagreeable noises, or produces noisome smells or noxious vapors, whereby the property and comfort of those dwelling in the neighborhood are materially injured and disturbed, the business is a nuisance per se. Such cases, however, are not particularly in point; for this is not the case of carrying on an offensive trade or business on one's own premises which may be carried on at places removed from the occupied parts of a city, or beyond its limits.

The case of Baltimore & P. R. Co. v. Fifth Baptist Church, 108 U. S. 317, 2 Sup. Ct. 719, also relied on by the plaintiff, is more nearly in point than any other cited. But that case is clearly distinguishable from the one at bar. It was a case where a commercial railway company, whose motive power was steam, located its engine house and machine shop immediately adjoining a then existing church edifice, which was, and had been for some years prior to such location, continuously used by the church as its house of worship. The hammering in the shop, the passing of the engines in and out of the roundhouse, the blowing of whistles, the sounding of the bells and the cinders and offensive odors, created a constant disturbance of the religious exercises of the church. Such acts were held to constitute an actionable nuisance, and it was held that the church was entitled to damages in the premises. This was clearly a case of an improper and unreasonable location of its roundhouse and machine shop by the railway company, with reference to which the court, in its opinion, at page 334, said,

"There are many places in the city sufficiently distant from the church to avoid all cause of complaint, and yet sufficiently near the station of the company to answer its purposes."

But there is a radical difference between an ordinary commercial railway, operated by steam, and a surface street railway, operated by electricity, as to the selection of its roundhouses and machine shops by the one, and its car barns by the other. In each case the selection must be made with reference to the rights of property owners in the neighborhood; also, those of the railway company and of the public. The rights and convenience of property owners cannot alone be considered, for one living in a city must necessarily submit to the annoyances which are incidental to urban life, and individual comfort must in many cases yield to the public good.

Now, the only ground for claiming in this case that the location of the defendant's car barn was an improper one is that it is in the residence portion of the city. But the exclusive business of the defendant is the carrying of passengers within the limits of the city and in its streets. Its lines traverse the streets of the residence portion of the city. Its business is there. It takes on and dis-

charges passengers in all parts of the city. It must have its car barns so located that it can promptly get its cars upon its lines for the purpose of enabling the people of the city to seasonably get from their homes to their respective places of business or labor. It cannot locate its barns outside of the city, because it is only authorized to build and operate its lines within the city limits and upon its streets; and, if it had the authority to do otherwise, it would be impracticable and detrimental to public interests to do so.

Again, if it locates its barns at points where there are at present no dwelling houses, it is only a matter of time when some property owner will be disturbed by the loud and disagreeable noises necessarily occasioned by taking its cars in and out of the barns. The rights of such an owner are the same as those of the plaintiff. The barn in question is only one of five barns located and used by the defendant for the same purpose in different parts of the city, and the evidence conclusively shows that its location is not an improper or unreasonable one.

The further question, whether the maintenance and use by the defendant of the switches and curves in question are a proper street use, is settled adversely to the plaintiff by the previous decisions of this court. Such maintenance and use are a necessary incident to the operation of its street-car system, which derives its business from the streets, is intended for the convenience of the travel therein, and is in aid of the identical use for which the streets were acquired; hence the maintenance and operation of these switches and curves are a proper street use, and not an additional burden thereon. Newell v. Minneapolis, L. & M. Ry. Co., 35 Minn. 112, 27 N. W. 839.

The discomfort and injury sustained by the plaintiff from the loud and disagreeable noises produced by taking the cars of the defendant in and out of its barn over the switches and curves at the place and at the times in question are the same, except in a greater degree, as are sustained by property owners at the street corners where its cars are operated over curves. The acts of the defendant complained of do not constitute a private nuisance for which the plaintiff is entitled to recover damages.

Order affirmed.