CZARNECKI *v.* BOLEN-DARNELL COAL COMPANY.

Opinion delivered May 24, 1909.

1. NUISANCES—WHEN ACTIONABLE.—A public nuisance may be actionable at the suit of one who suffers a peculiar damage therefrom, provided his injury is direct and not consequential merely, and is of substantial character. (Page 60.)

2. SAME—NOXIOUS GASES.—Where the complaint alleged, and the testimony tended to show, that defendant, in operating a coal mine, removed the waste product therefrom and dumped it on the surface, and set fire thereto, which caused smoke, sulphur fumes and other noxious vapors and gases constantly to arise and to render plaintiff's houses near by uninhabitable, and also that rains falling on the dump carried quantities of sulphur, alkaline salts and other substances in solution upon the plaintiff's property, ruining their wells and destroying vegetation, shrubbery and trees, it was error to instruct the jury to find for the defendant. (Page 62.)

3. SAME—MEASURE OF DAMAGES.—Where a nuisance causes a permanent injury to property, the measure of damages will be the depreciation in value of the property; but where the injury is only temporary, the measure of damages is the depreciation in the rental value of the property during the time of its maintenance or up to the time of trial. (Page 62.)

Appeal from Sebastian Circuit Court, Greenwood District; *Daniel Hon,* Judge; reversed.

*C. T. Wetherby,* for appellants.

1. Whether the state of facts complained of constitutes a public or private nuisance, there is conclusive evidence of special damage, and appellants are entitled to recover. 39 Ark. 403; 98 Mo. 523; 11 S. W. 990; 37 Cent. Dig. 1691, § 164, "Nuisances."

2. The actions are not barred. While no damages could be recovered for losses after the lapse of three years from their occurrence, yet damages accruing within three years are recoverable. The damages from noxious vapors could not be permanent, hence the statute did not begin to run immediately upon the dump becoming ignited; and since the fire had not existed for seven years, no right of prescription exists by way of defense in the defendant. 5 Met. 8; 49 Me. 539; 77 Am. Dec. 271; Wood on Nuisances, 2nd Ed., 727; 24 Am. Dec. 160; 84 Am. Dec. 631. The true measure of damages is the loss of rental values. 19 Hun, 272; 61 Mo. 359.

3. That appellant purchased after the mine was opened and a small dump was started does not affect their case. The injunction "so use your own as to do no injury to the property ot another" applies here. Cooley on Torts, 612; 1 Law T. (N. S.) 454; 11 H. L. Cases 642.

*Oscar L. Miles,* for appellee.

1. The facts shown to exist take this case clearly out of the class of private nuisances, and place it in that of public nuisances. Action for damages was not the remedy, but one to abate or punish a public nuisance. 81 Ark. 117; 71 Ark. 144.

2. Appellee was pursuing a lawful business, carefully and in accordance with the methods and general customs of other operators. No negligence is alleged or proved. 21 Am. & Eng. Enc. of L. 699; 64 Ark. 310.

3. A coal mine can only be located and operated where the coal is found, and the waste accumulations must of necessity be deposited at or near the opening to the mine. In the absence of proof of malice or negligence no action for damages can be maintained. 133 Pa. St. 126; 145 Pa. St. 324.

McCULLOCH, C. J. Antoni Czarnecki instituted an action against the Bolen-Darnell Coal Company to recover alleged damages to his real property, situated in the town of Hartford, Sebastian County, Ark. The owners of other adjacent real estate instituted similar actions against the same defendant, and the cases were consolidated and tried together. When the several plaintiffs had introduced their evidence, the court gave a peremptory instruction in favor of the defendant, and the plaintiffs have appealed.

The facts set forth in the complaint, and which the evidence tended to prove, are substantially as follows: The defendant owns and operates a coal mine at Hartford, Ark. It opened the mine and began operations in January, 1902. The plaintiffs own houses and lots nearby, some of which are occupied by them as their homes, and some are rented out to tenants. The defendant, in opening and operating the mine, removed the waste product, including dirt, shale, slate, slack coal, sulphur and other waste substances, and piled it near by, thus forming an enormous dump pile which, at the time of the action, was estimated to contain a

thousand carloads. The waste product is hauled out of the mine in cars and dumped, and as the pile grows the tracks are extended. This method of removing the waste and dumping it near the mine is shown to be customary in operating coal mines.

When the dump pile was of small proportions, say about fifty carloads, it became ignited and continued to burn as the size of it was increased by the daily additions of the waste products. At the time of the trial, it had been burning about three years, and the testimony tended to prove that the burning of the waste caused quantities of smoke and sulphur fumes and other noxious vapors and gases to arise constantly from the pile, and, being carried by the wind, to render the adjacent houses uninhabitable, and to make it dangerous to health to live therein; also, that the burning of the dump-pile caused quantities of sulphur, alkali, salts and other substances to be separated from the waste product and to become soluble in water; and that rains falling upon the dump carried said substances in solution upon the plaintiff's property, ruining the wells, destroying vegetation, shrubbery and shade trees. The premises of the plaintiffs are situated near this burning dump-pile, and it is claimed that they were damaged in this way.

Did this state of the pleadings and evidence make a case for the jury, or did the court correctly give a peremptory instruction for the defendant? If the defendant has created and maintained either a public or private nuisance, and the plaintiffs have suffered thereby in the use or enjoyment of their property, the remedy at law for the recovery of damages is complete.

"Damages," says Mr. Joyce, "to the special injury of the plaintiff may be recovered where they are occasioned by an act which is indictable as a public nuisance. And there may be a recovery, in an action to recover damages for a nuisance, for inconvenience and discomfort suffered by the plaintiff and which materially impaired the comfortable and healthful enjoyment of his property by himself and family." 3 Joyce on Damages, § 2151.

"A nuisance may be both public and private in its character; in so far as it is public, the person who suffers a peculiar damage therefrom has a right of action. There are three things which one who sues on account of a public nuisance must show, in addition to the existence thereof, before he can recover: 1. A par-

ticular, or, more exactly speaking, a peculiar, injury to himself beyond that which is suffered by the rest of the public. 2. The injury to him must, according to some courts, be direct, and not merely consequential. 3. It must be of a substantial character, not fleeting or evanescent. One who has sustained damage peculiar to himself from a common nuisance has a cause of action against the person creating or maintaining it, although a like injury has been sustained by numerous other persons." 4 Sutherland on Damages, § 1058; *Fisher* v *Zumwalt,* 128 Cal. 493.

This court, in *Durfey* v. *Thalheimer,* 85 Ark. 544, adopted the rule, which is undoubtedly in accord with justice, and which seems to be approved by the large majority of adjudged cases, that "it is the duty of every one to so use his property as not to injure that of another." "The maxim that one should enjoy or use his own property so as not to injure that of another, or the rights of another, is a principle of extensive application in the law of nuisance. It is a sound as well as ancient maxim of the law. It is an established rule as old as the common law itself, and is supported by the soundest wisdom. It may be extended in its meaning to the rule that one should not so use his property as to work harm or annoyance to another or use it in such manner as to infringe upon the rights of others." Joyce on the Law of Nuisances, § 27.

In the opinion in *Durfey* v. *Thalheimer, supra,* Judge BATTLE quoted with approval the following statement of the law from the New York Court of Appeals in *Bohan* v. *Port Jervis Gas Light Co.,* 122 N. Y. 18: "While every person has exclusive dominion over his own property, and may subject it to such uses as will subserve his wishes and private interests, he is bound to have respect and regard for his neighbor's rights. The maxim '*Sic utere tuo ut alienum non laedas*' limits his powers. He must make a reasonable use of his property, and a reasonable use can never be construed to include those uses which produce destructive vapors and noxious smells, and result in material injury to the property and to the comfort of the existence of those who dwell in the neighborhood. The reports are filled with cases where this doctrine has been applied, and it may be confidently asserted that no authority can be produced, holding that negligence is essential to establish a cause of action for injuries of such a character."

According to the principles thus announced, and under the testimony adduced at the trial below, the plaintiffs clearly had the right to have their case submitted to the jury, and an award of damages would have been justified. The burning dump-pile constituted a nuisance—at least the jury might have so found—and its continued maintenance was a sufficient ground for the recovery of damages.

It is argued that a distinction should be made as to a coal mine, because of the fact that it is operated at a fixed place and cannot be moved like manufacturing plants. Another way of stating this recognized distinction is that in the operation of a coal mine the material is not brought to or accumulated on the land, like a manufacturing plant, but that it is found and utilized there. *Pennsylvania Coal Co.* v. *Sanderson,* 113 Pa. St. 126; *Robb v. Carnegie Bros. & Co.,* 145 Pa. St. 324.

This distinction is doubtless a sound one as to things which are reasonably essential to the proper operation of the mine. Now, the evidence in this case shows that it is customary in the operation of mines to dump the waste products near the entrance to the mine; but it does not appear that it is either customary or necessary to burn the waste, or that the fire could not have been extinguished. The evidence in this case shows that the pile was comparatively small when it became ignited, but it burned steadily for more than three years because of the fact that the waste product containing inflammable matter had been daily added to it until the pile has grown to immense proportions. The evidence does not show precisely how the pile became ignited, but it was shown that it is customary to throw the ashes from the boiler on the pile, and it may have become ignited in this way.

Instead of taking the case from the jury by a peremptory instruction, the court should have submitted it under proper instructions, setting forth the law applicable to the case.

Mr. Joyce lays down the following rule as to the measure of damages in such cases: "Where a nuisance causes a permanent injury to property, the measure of damages will be the depreciation in the value of the property, that is, the difference between its value before and after the injury. If, however, the injury is not a permanent one, but only temporary or removable, the measure of damages will then be the depreciation in the rental

value of the property during the time of its maintenance or up to the time of trial." 3 Joyce on Damages, § 2150. In view of another trial we call attention to this rule.

For the error of the court in giving the peremptory instruction, the judgment is reversed, and the cause is remanded for new trial.