MARTIN H. BREDE AND OTHERS v. MINNESOTA CRUSHED STONE COMPANY.[1]

August 1, 1919.

No. 21,248.

**Nuisance — action to restrain operation of stone quarry — relief.**

1. When the undisputed evidence shows substantial interference with the comfort of residents in the vicinity of a stone quarry, caused by blasting and dust, they are entitled to some relief in an action brought to restrain the defendant from operating the quarry in such a manner as to constitute a nuisance.

**Restraining operation of lawful business — comparison of injury inflicted on parties not the test of relief.**

2. If a lawful business is conducted in such a manner as to interfere materially with the physical comfort of persons of ordinary sensibilities and habits, who live nearby, an injunction should be granted, permanently restraining its operation in such manner. A comparison of the injury defendant will suffer if an injunction is granted with the injury plaintiffs will suffer if it is denied, does not furnish the test by which the action of the court should be controlled.

**Defense of laches not open.**

3. The defense of laches is not available where for about two years plaintiffs have refrained from taking any action to restrain defendant from continuing to operate its quarry in the manner complained of, and it has expended a large sum of money in making permanent improvements on the property where it conducts its business.

**Revocation of license.**

4. A request that defendant quarry upon a certain portion of its premises is at most a license from those signing it, and is subject to revocation.

[1]Reported in 173 N. W. 805.

**Injunction — distinction between case of quarry and case of removable business.**

5. A distinction may properly be drawn between cases involving a nuisance caused by a factory or business which may be removed to another location, and those involving one caused by the operation of mines, quarries and other enterprises for the development of the natural resources of land which must be conducted at a fixed place. An injunction should not be granted as readily in the latter as in the former class of cases.

**Weight of evidence.**

6. No great weight should be given to the fact that a person complaining of a nuisance came to it or that others may be guilty of maintaining a similar nuisance in the same neighborhood.

**Nuisance — liability of landowner.**

7. A landowner may be liable for maintaining a nuisance by reason of his mode of carrying on a lawful business, even though the annoyances complained of are ordinary incidents of such a business when properly conducted.

**Same — additional evidence requisite.**

8. Further testimony should be taken to determine whether defendant may not remove or mitigate the annoyances complained of without seriously interfering with the prosecution of its business and such relief afforded to plaintiffs as may be justified by the additional evidence produced.

Action in the district court for Hennepin county to restrain defendant from so drilling, blasting and crushing stone on its premises as to cause plaintiffs injuries, discomforts and interference with the reasonable enjoyment of their respective homes, and to cause an impairment of the value of their respective properties. The case was tried before Fish, J., who when plaintiffs rested denied defendant's motion to dismiss the action, made findings that no injunction ought to be granted and dismissed the action. From an order denying their motion for a new trial, plaintiffs appealed. Reversed with directions.

*A. B. Jackson,* for appellants.

*Cohen, Atwater & Shaw,* for respondent.

LEES, C.

Alleging that defendant was operating a quarry in such a manner as

to create a private nuisance as to them, plaintiffs brought this action to enjoin the alleged nuisance. There was a trial without a jury, findings in favor of defendant, a motion for a new trial which was denied, and the case comes here on appeal from the order denying the motion.

In substance these were the facts as found by the trial court:

In 1904 defendant acquired the right to quarry and crush limestone underlying 40 acres of land in Lowry's East Side Addition to Minneapolis. Johnson street was its west boundary. The tract had been platted into lots and blocks, but was then wholly unoccupied. Defendant began quarrying operations thereon in 1904, which were continued until the summer of 1916. Later it acquired nine acres adjoining the 40 on the north. This is referred to as the "Kletzin" tract.

In quarrying, the defendant proceeds as follows: The earth and a stratum of shale are removed or stripped from the layers of limestone in which holes are drilled with steam drills and the stone is then blasted with dynamite. Fragments too large to handle conveniently are broken up by light charges of dynamite, and the stone is then loaded by a steam shovel into small cars and conveyed to a crusher on Johnson street. There the stone is crushed and separated into various sizes and sold for commercial uses. Railway trackage connects the property with the railways in Minneapolis.

When these operations were commenced there were few dwellings in the neighborhood and no street-car lines in the region. Now the region north and west of the quarry is fairly well settled, 32 of the plaintiffs residing within distances varying from 200 to 1,800 feet. They acquired their property for homes. A street-car line on Johnson street runs out beyond the quarry. In the region south and east of the quarry there are hardly any dwellings. It is devoted in the main to industrial uses and traversed by railroad tracks. West of defendant's quarry and within 300 feet of Johnson street there is another quarry operated by another company substantially as defendant's is operated. Defendant's land is mainly valuable for the underlying limestone.

In the three years immediately following 1904, several actions were brought against defendant by property owners in the vicinity of the quarry, who claimed to be damaged by defendant's operations. These actions were settled in October, 1907, by the payment of damages. Embodied in each settlement was a release of future damages which might

accrue from quarrying operations in Lowry's East Side Addition. Three of the plaintiffs in the present action and the predecessors in title of two of them made such settlements and gave such releases.

In the spring of 1915, defendant began to quarry on the Kletzin tract. Objections were made by a number of the residents on Johnson street, and the operations there were discontinued and resumed in Lowry's East Side Addition.

In the spring of 1916, a written request addressed to defendant was circulated among the residents in the neighborhood of the quarry, and was signed by or in behalf of 14 of the present plaintiffs. Defendant was thereby requested "to quarry the stone from the foregoing property (the Kletzin tract), using the utmost care in blasting, and refill same as soon as possible." On receiving this request in 1916, defendant again began and has since continued to quarry stone on the Kletzin tract, thus bringing its operations farther north and nearer to the dwellings of many of the plaintiffs.

In 1914, defendant began to grind the screenings from its quarry for use as a filler for asphalt paving. In 1915 and 1916, it installed and has since operated a pulverizing plant known as a "dust mill" to grind part of the product of its quarry to such fineness that it may be sprinkled on fields having an acid soil to neutralize the acids.

By the spring of 1916, defendant had invested in its buildings and equipment about $100,000. In November, 1917, its crusher was destroyed by fire. In January, 1918, it began to rebuild it and had half completed it at the time of the commencement of this action, and had expended for that purpose and for machinery over $44,000. In order to rebuild, it was necessary that defendant should obtain a permit from the building inspector of Minneapolis. Plaintiffs and others, on learning that defendant intended to rebuild, petitioned the city council to deny a permit, but the council refused to interfere and the permit was issued by the inspector.

The decision of the trial court turned upon the twelfth finding of fact, which in substance is as follows: Defendant's operations caused some discomfort and annoyance to the plaintiffs residing nearest to the quarry from the noises and vibrations created by the drills and steam shovels, by blasting, and from some increase of dust emanating from the dust mill. The consequences of the noise and dust are greatly ex-

aggerated by the testimony, and are naturally an incident to defendant's development and use of its property. An injunction against the operation of the quarry would destroy defendant's business and make its investment in buildings and equipment largely worthless, but the situation and surroundings are such that the cessation of its business would not add materially to the health or comfort of plaintiffs or to the free use and enjoyment of their property. In a memorandum appended to the findings, the court remarked, that the injunction must be either wholly given or wholly denied, no middle course being open, and that "there is enough merit in plaintiffs' contentions to require on defendant's part the utmost care to avoid unnecessary harm to neighboring property."

1. We have examined the voluminous record with care to ascertain whether this finding is sustained by the evidence. There is but little real conflict in the evidence. A host of witnesses, most of them parties plaintiff or members of their families, testified to substantial interference with the comfort of residents in the vicinity of the quarry caused chiefly by blasting and by dust from the dust mill. After making due allowance for many evident exaggerations in the testimony, the fact remains and is recognized in the findings, that defendant's operations do cause appreciable annoyance and discomfort to plaintiffs. That there were noise and dust is not disputed. The testimony of defendant's witnesses, who resided near the quarry, was that they did not find the noise and dust objectionable; some of them, because they had become accustomed to it. The explosions of dynamite and consequent jarring of plaintiffs' dwellings, of necessity disturbed the comfort and repose of persons living near the quarry, especially when they were accompanied, as was sometimes the case, by a shower of falling stones, which reached the premises of some of the plaintiffs. Limestone dust is acrid and sticky and much more annoying than ordinary street dust. The interference with plaintiffs' enjoyment of life and property was not of the sort to which city dwellers must submit as an inevitable accompaniment of urban life. It was shown to be offensive to the senses, and injurious to the health of many of the plaintiffs. Some 40 witnesses testified to conditions created by defendant, which would unfailingly cause substantial discomfort to ordinary individuals, while about one-third as many testified that the same conditions did not personally inconvenience

them. We take notice of the fact that the sensibilities of individuals vary, some being more and others less annoyed by noises and dust than the average person, but see no escape from the conclusion that the manner in which defendant is conducting its operations would necessarily cause material discomfort to ordinary people of average feelings and habits. We cannot give our approval to the twelfth finding of fact in its entirety, hence plaintiffs are entitled to some relief if not precluded from it on grounds now to be considered.

2. Counsel for defendant cite cases holding in effect that if the injury complained of is caused by the operation of a lawful business, carried on in a district given over to kindred classes of business, and the injury is only such as naturally flows from the operation of a business of that character, an injunction will not be granted if it would entail a serious injury to the defendant or to the public as compared to the injury complained of by the plaintiff. This is commonly referred to as the "comparative injury doctrine." The cases in which this doctrine has been given effect are collected in a note to Town of Bristol v. Palmer, 31 L.R.A.(N.S.) 881-893, and in 20 R. C. L. 480.

Other authorities adopt the ancient doctrine, that the rights of habitation are superior to the rights of trade, and, whenever they conflict, the rights of trade must yield to the primary or natural right. They hold that if a lawful business is conducted in such a manner as to offend or interfere materially with ordinary physical comfort, measured, not by the standards of persons of delicate sensibility and fastidious habits, but by the standards of ordinary people, a permanent injunction should be granted. The cases so holding are also collected in the note to Bristol v. Palmer, supra, page 888, and it is said that this doctrine is supported by the greater weight of authority. We are of the opinion that the latter is the better doctrine, and that ordinarily it should be applied in determining whether an injunction should be granted or denied in cases such as this.

3. Defendant began to operate its quarry in 1904, and no one sought to restrain its operations until this action was begun. Only a few of the plaintiffs have ever made any claim for damages. It is contended that they have, therefore, been guilty of laches or have at least acquiesced in the maintenance of the alleged nuisance, and hence are now barred from relief. We are of the opinion that this is not a good de-

fense.  Matthews v. Stillwater G. & E. L. Co. 63 Minn. 493, 65 N. W. 947.  If defendant was engaged in quarrying on the 40-acre tract only and was not operating its dust mill, the situation would be materially different, but the operations on the Kletzin tract and in the dust mill were begun only about two years prior to the commencement of this action.  Defendant is now blasting nearer to plaintiffs' premises than ever before and is creating dust of a new character and in increased quantities.  The period over which these conditions have extended is comparatively short and no claim of laches can be made successfully.

4. The effect of the request that defendant quarry on the Kletzin tract, which was signed by several of the plaintiffs, is next to be considered.  Possibly those who signed it may not be entitled to relief by injunction, but, of course, their action is not binding on the plaintiffs who did not sign.  At most the request amounted to a license to defendant to carry on its operations as it is doing, and, like other licenses, is subject to revocation.  Dwight v. Hayes, 150 Ill. 273, 37 N. E. 218, 41 Am. St. 367.

5. It has been held that every landowner has the right to develop and use the natural resources of his land, and, in the absence of negligence, is not liable for consequences incidental to such development and use.  This is the doctrine in Pennsylvania and Kansas, and it is greatly relied on by the defendant here.  Pennsylvania Coal Co. v. Sanderson, 113 Pa. St. 126, 6 Atl. 453, 57 Am. St. 445; Robb v. Carnegie Bros. & Co. 145 Pa. St. 324, 22 Atl. 649, 14 L.R.A. 329, 27 Am. St. 694; Alexander v. Wilkes-Barre Anthracite Coal Co. 254 Pa. St. 1, 98 Atl. 794, L.R.A. 1917B, 310; Phillips v. Lawrence, etc., Co. 72 Kan. 643; Helms v. Eastern Kan. Oil Co. 102 Kan. 164, 169 Pac. 208, L.R.A. 1918C, 227.  On the one hand it is said that these cases disregard the fundamental principle of the common law, that one must so use his own as not to injure another; and, on the other, that a coal mine, oil well, or stone quarry, must be operated at a fixed place and cannot be moved like a factory, and hence is not within the application of the principle.

We are inclined to think there is a distinction, but, as was pointed out in Czarnecki v. Bolen-Darnell Coal Co. 91 Ark. 58, 120 S. W. 376, the distinction is sound only insofar as it relates to things which are reasonably essential to the proper operation of a mine or quarry.  In a well considered case, Pwllbach Colliery Co. v. Woodman, Ann. Cas.

1[1915 A. C. 634.]

1915D, 833, it was said, that permission to carry on a business is quite a different thing from permission to carry it on in such a manner as to create a nuisance. It ought not to be held that, because a landowner has a deposit of limestone on his land, he may quarry and fit it for commercial uses in any way he chooses, provided he is not negligent in what he does. He may be liable for maintaining a nuisance by reason of the manner in which he carries on his business, even though evil odors, noise, dust and the like are ordinary incidents of such a business when properly conducted. Lead v. Inch, 116 Minn. 467, 134 N. W. 218, 39 L.R.A. (N.S.) 234, Ann. Cas. 1913B, 891; Matthias v. Minneapolis, St. P. & S. Ste. M. Ry. Co. 125 Minn. 224, 146 N. W. 353, 51 L.R.A. (N.S.) 1017; Lynch v. Shiely, 131 Minn. 346, 155 N. W. 390; Stuhl v. Great Northern Ry. Co. 136 Minn. 158, 161 N. W. 501, L.R.A. 1917D, 317.

We are not disposed to adopt any rule which will hamper the development of the natural resources of the state, but in their development reasonable regard must be had for the health and comfort of people living in the neighborhood.

In Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. ed. 205, Mr. Justice Harlan remarked that all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community, and in State v. New England F. & C. Co. 126 Minn. 78, 147 N. W. 951, 52 L.R.A. (N.S.) 932, Ann. Cas. 1915D, 549, this court quoting the remark said "that no vested * * * right exists to use * * * property for purposes injurious to either public health or morals."

6. The fact that many of the plaintiffs acquired their property after defendant began to operate its quarry is of no particular importance. But little is now left of the doctrine under which a person coming to a nuisance had no right to complain of it. 20 R. C. L. 495; 2 Wood, Nuisances, § 802; Campbell v. Seaman, 63 N. Y. 568, 20 Am. Rep. 567; Oehler v. Levy, 234 Ill. 595, 85 N. E. 271, 17 L.R.A. (N.S.) 1025, 14 Ann. Cas. 891; Bushnell v. Robeson & Co. 62 Iowa, 540, 17 N. W. 888; Van Fossen v. Clark, 113 Iowa, 86, 84 N. W. 989, 52 L.R.A. 279. Neither is much weight to be given to the fact that another quarry near plaintiffs' dwellings is operated similarly and with like effect upon the neighborhood. 1 Wood, Nuisances, § 558; 20 R. C. L. 492.

7. Under the undisputed evidence plaintiffs are entitled to some relief. We are unable to agree with the learned trial judge that either relief must be wholly denied or defendant's business destroyed. We think there is middle ground upon which the court's decision should be planted, and that by altering its mode of operations defendant may continue to carry on its business successfully without creating a nuisance. If, by adopting improved methods and appliances, the injuries complained of can be avoided, or at least so diminished that plaintiffs will suffer discomforts no greater than those ordinarily incident to life in many sections of every city, defendant should be required to adopt them. Joyce, Nuisances, § 90. Harvey v. Susquehanna Coal Co. 201 Pa. St. 63, 50 Atl. 770, 88 Am. St. 800.

The case is one in which relief should be given under the rule that an injunction should never go beyond the requirements of the particular case, nor should it close an industrial plant, if it is possible to avoid doing so, while giving plaintiff the relief to which he is entitled. Little or no evidence was introduced to show whether the noise of blasting can or cannot be smothered, or whether its jarring effects may or may not be reduced by using smaller charges of dynamite without seriously interfering with defendant's quarrying operations. The court was not advised as to the possibility of controlling the escape of lime dust from defendant's crusher and dust mill. We should suppose that it is feasible to confine the dust very largely to defendant's own premises and so remove, or substantially mitigate, the annoyance to plaintiffs from that source. Further testimony should be taken on these features of the case only, in order that the trial court may be in a position to act intelligently in affording plaintiffs relief, without destroying defendant's business.

The order denying a new trial is reversed and the case remanded for further proceedings in accordance herewith.