Hubert J. FISH and Faye E. Fish,
Plaintiffs,

v.

HANNA COAL AND ORE CORP., a cor-
poration, Defendant.

No. 5-57 Civ. 21.

United States District Court
D. Minnesota,
Fifth Division.

Aug. 27, 1958.

Ryan, Ryan & Ebert, by Richard C. Ebert, Brainerd, Minn., for plaintiffs.

Dancer, Montague, Applequist, Lyons, Nolan & Nordine, by Harry C. Applequist, Duluth, Minn., for defendant.

DONOVAN, District Judge.

In this diversity action plaintiffs Hubert J. Fish and Faye E. Fish (husband and wife) seek damages and an order in abatement because of an alleged nuisance.

The action was tried to the court in Duluth, Minnesota at the May 1958 General Term, and trial was concluded on June 2, 1958. Final briefs were submitted on June 25, 1958.

From the facts developed at trial it appears that plaintiffs moved into their present home in Trommald, Minnesota, in

1931. The house and property were purchased from Faye's father for $500. At the time of trial approximately $3,000 had been expended in improvements. Trommald is a mining community or "location" presently consisting of 35 to 40 occupied dwellings, a store and a tavern. It is located in the Cuyuna Range some five miles from Crosby-Ironton. Like other communities on the Cuyuna Range, Trommald owes its existence to the presence of iron ore and the industry devoted to its extraction from the earth. Open pit mines lie in close proximity to Trommald. One such mine is the Morocco owned by defendant. This mine lies directly south of plaintiffs' property; the mine's appurtenant property separated from that of the plaintiffs by a public road.

When the plaintiffs moved into possession of their property, the Morocco Mine was not in operation and its pit was filled with water.[1] In 1953 defendant decided to resume operations. This necessitated draining the pit and stripping the overburden of earth and stone from the ore veins. 5,000,000 tons of overburden were removed to extract 1,500,000 tons of merchantable ore. The overburden was removed from the pit in Euclid trucks to dumps located on land owned by the defendant at points where testing disclosed no underlying ore body.

The overburden was placed on a dump site south of the mine until in March 1956 available space at this site was expended. Thereafter, the overburden was placed on a new dump constructed north of the mine and directly south of plaintiffs' property.

The trucks traversed the road separating the plaintiffs' premises from that of the defendant on their journey to the north dump. This traffic, consisting of five trucks in continuous operation on eight hour shifts around the clock for six days a week, continued from March 1956 to May 1957 with the exception of two months in the summer of 1956 when mining operations suspended during a nation-wide strike in the steel industry.

The distance between plaintiffs' house and the road is approximately 103 feet; between the road and the edge of the dump, 72 feet; and between the house and the crest of the dump, 317 feet. A Diesel-motored shovel operated upon the dump. Water trucks sprayed the site at fifteen minute intervals to combat the dust incident to the trucking and dumping operation. Calcium chloride was regularly applied to aid in solidifying or "stabilizing" the dump. The dump was completed and travel to and upon it ceased in May 1957.

Plaintiffs contend[2] that this dumping operation constituted a nuisance in that

---

1. The nation was in the growing pains of a depression at that time. Trommald, like similar communities in Northern Minnesota, was developing characteristics of a ghost town. The market for Cuyuna Range ore was ebbing. Industry reacted normally reducing operations.

2. Paragraphs IV, V, and VI of the complaint allege:
 "IV. That, early in the year 1956 and continuing to May 1, 1957, defendant removed from its nearby so-called 'Morocco Mine' and deposited on its said premises, and immediately south of plaintiffs' said home, huge quantities of refuse consisting of fine dust and sand, earth, rocks and iron ore, and created a refuse dump therewith; that defendant used large trucks, earth movers and

bull dozers to deposit said materials on its said premises and to move and to pile the same to a height of approximately fifty (50) feet thereon. That defendant has created explosions that have vibrated plaintiffs' house and caused irreparable damage thereto."
 "V. That by reason of the facts set forth in Paragraph IV. and as a result thereof defendant caused and permitted and now causes and permits clouds of dust, sand and iron ore to descend on plaintiffs' home and large rocks to fall upon their premises and cause continuous loud and objectionable sounds and noises and strong vibrations* to intrude on plaintiffs' property, all thereby causing great damage to plaintiffs' home and furnishings thereof and making it impossible

it was accompanied by intense noise and caused and still causes a continuous seeping of dust onto their premises and into their home thereby interfering with the comfortable enjoyment of their lives and property. As stated in plaintiffs' brief:

"Plaintiffs claim that the construction and maintenance of the dump constitute a private nuisance by reason of the resulting noise and dust. It is admitted that the mine cannot be moved and it is admitted that the mine itself is not a nuisance either in law or in fact. Nevertheless, the dump did not have to be constructed and maintained across the street from plaintiffs' house and that the dump is a private nuisance in law and fact."

 The substantive law of Minnesota controls disposition of the case at bar.[3] Minnesota Statutes Annotated § 561.01 defines a nuisance to be:

"Anything which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property so as to interfere with the comfortable enjoyment of life or property. * * *"

It is not every discomfort resulting from the use to which adjacent property is put that constitutes a nuisance. Noise and dust or smoke incidental to the operation of a business which causes discomfort interfering with the enjoyment of life or property are not, by reason of that interference, nuisances as a matter of law.[4] The interference must be a material and substantial one in order that a nuisance exist entitling the party to relief, and the degree of the discomfort is measured, not by the standards of persons of delicate sensibilities and fastidious habits, but by the standards of ordinary people having regard to the character of the area in which they reside.[5]

The conduct of many industries is such as to cause discomfort and inconvenience to persons residing nearby. If the activity producing discomfort and inconvenience is necessarily attendant to the proper conduct of the industry, and the industry is located in a place given over to industrial uses, no relief will be forthcoming unless the activity is so offensive as to constitute a nuisance no matter where located. As stated by the Minnesota Supreme Court:

"No court will stop a great mining enterprise unless it is made to appear that an invasion of private or public right is imminent. * * * Flying fragments, noise and vibrations from blasting, and smoke and rattle from steam shovels and ore trains may be so controlled as not

---

for plaintiffs to sleep and otherwise to use and enjoy their home and premises in comfort.

"VI. That, by reason of the foregoing, plaintiffs' home was greatly damaged and diminished in value and plaintiffs and each of them were made sick and nervous and their health impaired, all to their damage in the sum of Fifty Thousand ($50,000) Dollars."

The complaint demands relief as follows (in addition to damages):

"2. That defendant shall forthwith remove from its said premises all of the materials heretofore placed thereon by it.

"3. That defendant shall henceforth cease and desist from depositing any fine dust, and sand, earth, rocks or iron ore upon its said premises and to cease and desist from causing any loud noises and sounds to intrude on plaintiffs' said premises and to cease and desist from causing plaintiffs' house to vibrate, whether by explosion or otherwise." *

* No claim was pressed at trial with reference to explosions, vibrations or damage therefrom.

3. Wood v. Gas Service Company, 8 Cir., 245 F.2d 653.

4. Romer v. St. Paul City Ry. Co., 75 Minn. 211, 77 N.W. 825; Village of Wadena v. Folkestad, 194 Minn. 146, 260 N.W. 221; Jedneak v. Minneapolis General Electric Co., 212 Minn. 226, 4 N.W. 2d 326.

5. Brede v. Minnesota Crushed Stone Co., 143 Minn. 374, 173 N.W. 805, 6 A.L.R. 1092; Jedneak v. Minneapolis General Electric Co., supra.

to interfere materially with the peace and comfort of residents. * * * It is reasonable to require those, who take up * * * residence in a municipality dependent for its very existence upon the industry there carried on, to somewhat endure the disturbances and discomforts that unavoidably attend the proper and careful operation of the industry. * * * " [6]

The problem of determining what constitutes a material interference with the enjoyment of life and property in an industrial area is, in the words of the Minnesota Court,

"[one of] * * * measuring what is normal and what is abnormal interference with life in an industrial area.

" * * * ordinarily the fact that an industry is being operated under methods best calculated to remove the conditions causing the inconvenience is convincing indication that whatever annoyance is being suffered by those living there is only such as is inescapably present in that area. Though negligence upon the part of defendant need not be proved, whether defendant was doing as much as reasonably was possible in the way of careful operation becomes the measure of whether there has been substantial interference with plaintiffs' enjoyment of life." [7]

Plaintiffs allege that their health has been impaired as a result of the noise incident to defendant's operations which prevented normal sleep. Obviously sustained loss of sleep will impair health and the causative activity will fall into the statutory definition of a nuisance. From the plaintiffs' own testimony it appears that neither suffered any illness, sought medical attention, or took medicines or sedatives. Hubert did not lose a day's work nor report late for work as a result of the noise. The noise did not interfere with Faye's conduct of her duties as postmistress, nor as a housewife. Both admit to good health. Faye has been nervous during the period here involved, but she states, "I know I'm nervous * * * but so what * * * I don't blame it on the dump."

The plaintiffs' evidence tends to show that the noise was such as to prevent normal sleep, to prevent conversation save by shouts, and to prevent auditing of television programs. The noise was, characterized, "a blatant roar." Defendant's evidence tends to show that the noise was such as attends a normal mining operation, was louder than that produced by an automobile but of a lower pitch so as to be not particularly bothersome, and was such as to permit normal conversation within 15 to 25 feet of a Euclid in operation. In short, the noise was a continuous hum to which one became accustomed.

The plaintiffs' evidence tends to show that prior to the defendant's resumption of operations at the Morocco Mine, the plaintiffs had no dust problem; that since the construction of the dump large quantities of fine red dust have infiltrated their home covering their furnishings and clothing; that whereas Faye cleaned her home thoroughly once weekly prior to construction of the dump, she now finds it necessary to give it a "soap and water" cleaning daily; and that on windy days the dust permeates the air in the vicinity of plaintiffs' home in clouds obscuring vision. The defendant's evidence tends to show that dust has been a problem in Trommald for 30 years; that it is a problem common to Cuyuna Range communities; that no clouds of dust have ever been observed in the vicinity of plaintiffs' home or the dump; that inspection of plaintiffs' home and premises following oral complaint by Faye disclosed the existence of dust in amounts no greater than that produced by a

---

6. Reed v. Village of Hibbing, 150 Minn. 130, 184 N.W. 842, 844.

7. Jedneak v. Minneapolis General Electric Co., supra, 212 Minn. 226, 4 N.W.2d 326, 328, 329.

normal mining operation; and that comparative chemical testing of samples of dust taken from plaintiffs' premises and materials from the dump revealed that the dump samples contained only five percent of the type of material found in the sample taken from plaintiffs' premises.

The construction and maintenance of dumps are a necessary part of an open pit mining operation. Hubert (who has been employed as a truck driver engaged in the same type of operation) admits there was nothing unusual about the manner in which defendant constructed or maintained the dump or in the manner in which the overburden was transported. Defendant's evidence tends to show that all reasonable means of decreasing the noise and dust necessarily attendant to such an operation were employed. Plaintiffs do not dispute this, but contend that defendant's choice of a dump site location was unreasonable. Evidence introduced by the defendant tends to prove that the dump was located in the only practical, available location, and plaintiffs introduced no evidence to the contrary.

It is my conclusion upon the record herein made that defendant was doing as much as was reasonably possible in the way of operating the type of industry involved, so as to avoid substantial interference with the comfortable enjoyment of life and property by plaintiffs, and in keeping with the applicable law of Minnesota.[8]

■■ The burden of proof in the instant case is upon the plaintiffs. The evidence is conflicting to such an extent as to require the trier of the facts to resolve doubts on weight and sufficiency against the party required to carry the burden of proof. Plaintiffs have failed to establish the existence of a nuisance.

Defendant may submit findings of fact, conclusions of law, order for and form of judgment in its favor.

Plaintiffs are allowed an exception.

8. See cases cited in footnote 4, supra.