## NICK NELSON v. CHARLES M. BABCOCK.[1]

April 13, 1933.

No. 29,354.

A brief was filed on behalf of appellant by *Henry N. Benson*, former Attorney General, *Harrison B. Sherwood*, former Assistant Attorney General, and *Victor J. Michaelson*.

[1]Reported in 248 N. W. 49.

Upon hearing of the case there was an appearance and argument on behalf of appellant by *Harry H. Peterson,* Attorney General, and *John E. Katzmarek,* Assistant Attorney General.

*Jenswold, Jenswold & Dahle,* for respondent.

HOLT, JUSTICE.

Defendant appeals from the judgment awarding plaintiff damages. Before the judgment was entered defendant's motion in the alternative for judgment notwithstanding the verdict or a new trial had been denied. So all questions raised by said motion, and to which assignments of error in this court are directed, are for decision on this appeal.

The main contention is that defendant is not responsible for any damages plaintiff may have sustained. This was raised by defendant's objection to the introduction of any evidence on the ground that the complaint failed to state a cause of action, by his motion for a directed verdict, and by his motion for judgment notwithstanding the verdict. The argument is based on the proposition that the commissioner of highways is not personally liable for the consequences of his official acts done within the scope of his authority. The proposition is legally correct. But the facts pleaded and proved placed defendant's acts outside the scope of his authority, according to the findings of the jury.

It is conceded, or established, without dispute, that Lake county undertook to lay out and construct through its territory a road running along the shore of Lake Superior from Two Harbors toward Grand Marais, pursuant to an understanding with the state highway department that such road when built would become a part of trunk highway No. 1. Plans for the road were submitted to the department, and it made duplicate blue print copies thereof for the use of the county and its contractors in the construction of the road; and soon after its completion defendant designated it as trunk highway No. 1 and assumed its maintenance. At one place, where it goes through plaintiff's land, a rock cliff rises almost perpendicularly over 100 feet above Lake Superior, the base of the cliff being only 30 or 35 feet from the water. The right of way

acquired was 100 feet wide. It was therefore necessary to blast away a large part of this cliff to make the roadway of proper width. After completion of the road it was found that rocks, loosened from the sheer cliff wall by the elements, fell onto the roadway, endangering travel. In the summer of 1930 defendant, or the state highway department, for the purpose of making the road safe, undertook to blast away a large portion of the cliff wall. The work was not done by contractors, but by the highway department under the supervision of Mr. Mold, a district maintenance superintendent. It does not appear how extensive the blasting or sloping off of the cliff wall was intended to be when the work started. But apparently the slope went beyond the boundary of the right of way, for plaintiff sought an injunction against defendant. It does not appear whether the ground for injunction was because of the nuisance and damage done by the blasting or because the blasting was on plaintiff's land beyond the northwesterly boundary of the right of way. We may assume that it was based in part on the latter ground; for when the injunction issued defendant started proceedings to acquire by condemnation 100 to 150 feet of plaintiff's land along and adjacent to the northwesterly line of the right of way so that a proper and safe slope could be made in the high cliff wall. Under the statute, L. 1927, p. 339, c. 237, § 1(e), 2 Mason, 1927, § 6557-1, the starting of the condemnation immediately gave defendant the right to take possession of the additional land and proceed with the work, widening the right of way and constructing the proper slope. So far there is no material dispute. Upon disputed testimony the jury could find that a large part of the slope excavated or blasted out of the rock cliff on the northwesterly side of the right of way was designedly and wilfully dumped or moved onto plaintiff's land beyond the southeasterly boundary line of the right of way, so that the fill extended out into the lake, deflecting the currents therein which theretofore had cast valuable gravel deposits upon plaintiff's shore.

When defendant deposited the rock on that part of plaintiff's land not acquired nor intended to be acquired by him for the state,

he clearly departed from the scope of his authority. Since defendant, and none other, could condemn this additional right of way needed to make a proper or safe highway, he of course must be charged with knowledge of the purpose to move a great quantity of rock and the need of a place whereon to place it. There is no pretense that it could have been disposed of upon the right of way. We think the jury could find defendant sufficiently connected with the whole enterprise of depositing this large volume of rock removed from the rock cliff onto plaintiff's land so as to make him answerable therefor. He alone could decide upon and acquire this additional right of way, and necessarily must plan whereto the large quantity of rock to be removed therefrom should be deposited. From a legal view it should make no difference whether the rock was deliberately and intentionally dumped on plaintiff's land or whether it was thrown thereon by dynamite blasts. Upon the virtually undisputed facts stated and those the jury by the verdict accepted as true, should defendant escape liability? We think not.

By statute, L. 1921, p. 406, c. 323, § 13 (1), as amended by L. 1925, p. 430, c. 341, 1 Mason, 1927, § 2554 (1), the commissioner of highways is given extensive and exclusive powers in respect to the acquisition by gift, purchase, or condemnation of all land needed for the construction and maintenance of trunk highways. He appoints two assistants, one of whom shall be an experienced highway engineer, and he also appoints such other assistants and employes as he deems needful from time to time. The legislature anticipated that the commissioner, in the stupendous work to be carried on by himself and subordinates, might go beyond the scope of his authority to the injury of private property, for he is required to give a bond in the sum of $25,000 (premium paid out of the highway fund) conditioned for the faithful performance of his duties, upon which bond "any person damaged by any wrongful act or omission of said commissioner of highways in the performance of his official duties may maintain an action" for the recovery of damages so sustained. The statute calls for a similar bond from each of the two assistants in the sum of $10,000; but other assistants or other employes

give no bonds unless required by the commissioner. G. S. 1923 (1 Mason, 1927) § 2553. These statutes bestow great powers on the commissioner, but also take precaution that they be exercised within the scope of his authority. Above all, the constitution forbids the taking, damaging, or destroying of private property for public use without compensation first paid or secured. Art. 1, § 13. When there is a clear violation of the constitutional right of property of a private person, a remedy therefor is also assured to him by the constitution. Art. 1, § 8.

In the construction and maintenance of a trunk highway, lawfully established or taken over by the commissioner, he is not liable to those injured by defects in the highway due to his negligence or the negligence of his subordinates or employes, nor is he liable for consequential damages to adjacent landowners due to faulty or negligent plans of construction. It was so held in Wilbrecht v. Babcock, 179 Minn. 263, 228 N. W. 916. Defendant relies thereon. But that case came here on demurrer, and the complaint went no further than to predicate the cause of action upon the fact that the commissioner in constructing a state highway across a level country had raised the roadway slightly above the surface and constructed ditches upon the right·of way, so that the surface water flowed upon the plaintiff's land, causing consequential damages, which acts were charged to have been done by the commissioner in his official capacity. Surface water is regarded as a common enemy which every landowner may protect against as long as he does not gather and discharge it in destructive quantities upon his neighbor's land. The court, in holding the complaint demurrable, stated [179 Minn. 264]:

"The defendant as commissioner of highways was charged by law with the duty of locating, constructing, and maintaining it [the highway]. The legislature did not specify the grade nor make any regulations in respect to the details of the work but left all such matters to be determined by the commissioner. The duties imposed upon him require the exercise of a high degree of skill, judgment, and discretion, and are performed solely for the benefit of the

public. It is well settled that an officer charged with the performance of such duties is not personally liable for errors of judgment or for acts done within the scope of his authority, unless it appears that the particular acts complained of were not only unnecessary but were done corruptly or maliciously. * * * The facts do not bring defendant within the rules which apply where a public officer is performing ministerial duties or commits acts outside the scope of his authority."

We think the evidence and conceded facts permitted the jury in finding that in the trespass on plaintiff's land defendant committed acts outside the scope of his authority. When he went outside the boundaries of the right of way upon plaintiff's land and damaged it or destroyed its former condition and usefulness, he must be held to have designedly departed from the duties imposed on him by law. There can be no claim that he innocently thus invaded plaintiff's land southeasterly of the right of way. Surveys clearly marked the limits of the land appropriated for the right of way of this trunk highway before construction began.

The cases relied on by defendant from Iowa and Michigan appear to us to justify a recovery upon the facts the jury could find here. In Pillings v. Pottawattamie County, 188 Iowa, 567, 176 N. W. 314, the recovery of damages suffered by the plaintiff from the reconstruction and change of grade of a long-established highway was sustained in so far as based upon the appropriation of land outside the right of way, but not as to the damages resulting from the change of grade; and this solely on the ground that the constitution of Iowa is not like ours in that respect. In Longstreet v. County of Mecosta, 228 Mich. 542, 200 N. W. 248, 249, in holding the authorities in charge of a highway not liable for a defect in the roadway occasioned by the repair of a broken bridge, the court said [228 Mich. 545]:

"There is no allegation of wilful negligence on the part of the members of the board, nor is the action for trespass by them upon property of an individual, nor for acts committed in excess of their authority."

In the case at bar there is trespass and appropriation of plaintiff's land, and acts of defendant in excess of authority or beyond authority.

Wadsworth v. Town of Middletown, 94 Conn. 435, 109 A. 246, seems to answer defendant's contention that he is not answerable for the wrongs of his subordinates. It holds that a public official is responsible for the illegal acts of one whose employment was discretionary with the official. Everyone concerned with the wrongs for which a recovery here was awarded was a subordinate or employe of defendant whose appointment or employment was discretionary with defendant. Moreover, the improvement was by defendant's direction; for, when the temporary injunction issued, he at once made use of his right to condemn the territory needed to be removed. In so removing the material it had to be placed somewhere else. It was not claimed by defendant that it was placed contrary to what defendant intended. No such defense was suggested either by answer or evidence. In Dowler v. Johnson, 225 N. Y. 39, 42, 121 N. E. 487, 3 A. L. R. 146, cited by defendant, the court said:

"We do not doubt the rule invoked by counsel for the defendant, and sustained by superabundant citations, that public officers are not liable for the negligence of their subordinates unless they coöperate in the act complained of, or direct or encourage it."

Further on in that opinion it is said [225 N. Y. 43]:

"But ratification may be equivalent to command, and coöperation may be inferred from acquiescence where there is power to restrain."

It is unnecessary to consider other cases cited, such as Michel v. Smith, 188 Cal. 199, 205 P. 113; Barker v. C. P. & St. L. Ry. Co. 243 Ill. 482, 90 N. E. 1057, 26 L.R.A. (N.S.) 1058, 134 A. S. R. 382; Keenan v. Southworth, 110 Mass. 474, 14 Am. R. 613; City of Duluth v. Ross, 140 Minn. 161, 167 N. W. 485; Robertson v. Sichel, 127 U. S. 507, 8 S. Ct. 1286, 32 L. ed. 203, for, as before suggested, the jury could find or infer that in so far as there was actual trespass

by appropriation of plaintiff's land as a dumping place for the rock to be removed from the additional appropriated right of way, defendant planned, approved, and ratified what was done by his subordinates.

An authority going far to sustain the recovery here is Hopkins v. Clemson Agric. College, 221 U. S. 636, 31 S. Ct. 654, 656, 55 L. ed. 890, 35 L.R.A.(N.S.) 243. The plaintiff there sued the college for damages to his land from the 'construction of a dyke on land in possession of the college. The college defended on the theory that the title to the land was in the state, that the construction of the dyke was authorized by the state and had been built by the college as a public agent upon land the title and possession of which was in the state, and asked that the complaint be dismissed. It was dismissed. The dismissal was affirmed. Hopkins v. Clemson Agric. College, 77 S. C. 12, 57 S. E. 551. The question raised by the appeal to the federal Supreme Court [221 U. S. 642] was "whether a public corporation can avail itself of the state's immunity from suit, in a proceeding against it for so managing the land.of the state as to damage or take private property without due process of law." After referring to the immunity of a state from suit, the court proceeds thus to answer the question [221 U. S. 642]:

"But immunity from suit is a high attribute of sovereignty—a prerogative of the state itself—which cannot be availed of by public agents when sued for their own torts. The eleventh amendment was not intended to afford them freedom from liability in any case where, under color of their office, they have injured one of the state's citizens. To grant them such immunity would be to create a privileged class free from liability for wrongs inflicted or injuries threatened. * * * The many claims of immunity from suit have therefore been uniformly denied, where the action was brought for injuries done or threatened by public officers. If they were indeed agents, acting for the state, they—though not exempt from suit— could successfully defend by exhibiting the valid power of attorney or lawful authority under which they acted. * . * * Besides, neither a state nor an individual can confer upon an agent author-

ity to commit a tort so as to excuse the perpetrator. * * * If the state had in so many words granted the college authority to take or damage the plaintiff's property for its corporate advantage without compensation, the constitution would have substituted liability for the attempted exemption."

To the same effect is Johnson v. Lankford, 245 U. S. 541, 38 S. Ct. 203, 62 L. ed. 460. We may also cite as bearing on the question here involved State, by Benson, v. Stanley, 188 Minn. 390, 247 N. W. 509. We may here refer to the fact that defendant attempted to show no warrant in law, and could show none, for trespassing upon or taking possession of plaintiff's land outside the right of way, acquired by condemnation. It may also be noted that neither by answer nor by proof did defendant seek to raise the defense that this action against him was a suit against the state.

Certain instructions to the jury are challenged only by the assignments of error. No argument is presented in the brief against any part of the charge, and we see nothing therein which could prejudicially affect defendant. No error is obvious in the instructions.

The verdict is claimed to be excessive; but from the argument presented in the brief the claim seems to be bottomed on the contention that the southeasterly boundary line of the right of way opposite the cliff extended to the waters of the lake, so that at least part of the rock dumped there was not on plaintiff's land. The record made this a question for the jury. There is nothing upon which we can say as a matter of law that the right of way reaches the shore line at the place where the removed material was placed. The evidence appears to indicate that the survey upon which the original right of way was acquired established a center line along which stakes were so set that the boundary line on either side was 50 feet from such fixed center line.

The judgment is affirmed.

OLSEN, JUSTICE (concurring).

The law is well established that a public officer is not responsible for the tort or negligence of his subordinates or servants who are employed by or under him in the discharge of his official duties.

Such subordinates and servants are servants of the state or municipality rather than of the official appointing them, and the rule of respondeat superior does not generally apply to the appointing official. But if the superior official has directed the wrongful or negligent act or acts to be done, or coöperated therein, or has knowledge thereof and consents thereto, he may be held liable.

As pointed out in the opinion of Mr. Justice Holt, this road project was of some magnitude. The commissioner of highways had been enjoined from proceeding with it because it encroached upon private property of the plaintiff outside of the right of way for the highway. He then condemned additional land for the highway. He must have been well informed as to the situation when so doing and informed of the necessity for providing place for the large quantity of rock to be blasted and removed from the right of way. As far as appears, no place was provided for the disposal of this material without dumping it on plaintiff's property. The blasting operations and casting of the rock upon plaintiff's property then continued. The jury might reasonably have found that defendant had knowledge of and consented to the manner in which the work was done and the rock disposed of.

In his motion for a new trial defendant objected to the part of the charge which authorized the jury to include the damages due to the careless manner in which the blasting was done. The objection does not appear to have been raised at the trial, and no exception to the charge on that ground was taken at the time. The appellant's brief does not argue the point. If there was any error in the charge on this point it should not now result in a new trial.

LORING, JUSTICE (dissenting).

The principles of law applicable to the liability of public officers for their own torts or those of their subordinates and employes are well established. Those officers who exercise functions within their authority which involve judgment and discretion are not liable for the results unless the acts complained of were not only unnecessary but corruptly or maliciously done. Wilbrecht v. Babcock, 179 Minn. 263, 228 N. W. 916. If in discharging purely ministerial duties

such an officer is guilty of a personal act of misfeasance, he is liable to one injured thereby. Moynihan v. Todd, 188 Mass. 301, 305, 74 N. E. 367, 108 A. S. R. 473. Unless he has been guilty of want of care in the selection of his subordinates or employes, he is not responsible for their tortious acts where they are not in his private service but are themselves servants of the government. He is responsible when he personally coöperates in the tort. Michel v. Smith, 188 Cal. 199, 205 P. 113. As said in City of Duluth v. Ross, 140 Minn. 161, 164, 167 N. W. 485, 486:

"It has been held in many decisions that a public officer, in the absence of statute, is not responsible for the misfeasance or positive wrongs, or for the nonfeasances or omissions of duty of the persons properly employed by or under him in the discharge of his official duties. Throop, Public Officers, § 592, and cases cited. Robertson v. Sichel, 127 U. S. 507, 8 S. Ct. 1286, 32 L. ed. 203; 29 Cyc. 1445, and cases cited; 23 Am. & Eng. Enc. (2 ed.) 382 and cases cited.

"This seems to be well settled law as applied to public officers and agents of certain classes. In Robertson v. Sichel, 127 U. S. 507, 8 S. Ct. 1286, 32 L. ed. 203, the officer was collector of the Port of New York; in U. S. v. Rodge (D. C.) 214 F. 283, and in Keenan v. Southworth, 110 Mass. 474, 14 Am. R. 613, the public official held not liable for the act of a subordinate was a postmaster; in Sawyer v. Corse, 17 Gratt. 230, 94 Am. D. 445, a mail contractor; in Donovan v. McAlpin, 85 N. Y. 185, 39 Am. R. 649, school trustees were held not liable for the negligence of a workman employed by them; McKenna v. Kimball, 145 Mass. 555, 14 N. E. 789, holds a school committee not liable for the negligence of an employe."

In Strickfaden v. Greencreek Highway District, 42 Idaho, 738, 763, 248 P. 456, 463, 49 A. L. R. 1057, 1071, 1072, the court said:

"The rule of respondeat superior does not apply where public officers are sought to be bound by the negligence of subordinate officers or employes, unless there has been a failure to exercise due care in the selection of such subordinates or the officers have knowledge of the negligent acts of the inferior officers."

In Robertson v. Sichel, 127 U. S. 507, 515, 8 S. Ct. 1286, 1290, 32 L. ed. 203, the Supreme Court of the United States said:

"The head of a department, or other superior functionary, is not in a different position. A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the nonfeasances or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties. * * *"

See also Sawyer v. Corse, 17 Gratt. 230, 94 Am. D. 445; Donovan v. McAlpin, 85 N. Y. 185, 39 Am. R. 649; Keenan v. Southworth, 110 Mass. 474, 14 Am. R. 613.

In the case of Michel v. Smith, 188 Cal. 199, 201, 205 P. 113, 114, the supreme court of California said:

"There is a well defined exception to the general rule which renders one responsible in a civil action for the tortious acts of those employed by or under him. A public officer is not responsible for the acts or omissions of subordinates properly employed by or under him, if such subordinates are not in his private service, but are themselves servants of the government, unless he has directed such acts to be done or has personally coöperated therein."

"This immunity rests upon obvious considerations of public policy, the necessities of the public service and the perplexities and embarrassments of a contrary doctrine." Mechem, Public Officers, § 789.

The rule is different as applied to such administrative officers as sheriffs, registers of deeds, treasurers, auditors, or clerks of court charged with the performance of duties to individuals. City of Duluth v. Ross, 140 Minn. 161, 167 N. W. 485.

What are the facts to which we must apply these rules in the case at bar? The defendant formulated no plan to make the highway safe, but left the matter to Mr. Rosenwald, his maintenance engineer, who in turn left the manner of improving the road to his district engineer, Mr. Mold. Babcock was never upon the work; he never made a suggestion or in any manner took part in carrying out the improvement. He may have ridden over the road, but there

is no evidence of this. The plaintiff himself makes no claim to the contrary, and at one place in the record declares his belief that Babcock was never on the work. I find no justification for saying that Babcock in any way either participated in or ratified what was done. He neither directed the work to be done in the manner in which it was done nor, as far as the record discloses, did he know it was being done. Certainly there is no evidence that he knew how it was being done. Although the record does not show it, it may be that he personally caused the condemnation proceedings to be instituted by the attorney general, following the injunction proceedings, the nature of which are not disclosed by the record. There is nothing more to be inferred from that fact than that he found the improvement required more land than theretofore expected. The institution of such proceedings certainly could not be construed as a ratification of previous tortious acts by subordinates, and to construe the condemnation as a determination to dump rock on plaintiff's land is going beyond the realm of legitimate inference. It was quite possible to make other disposition of such rock as it might be necessary to dislodge. Trucks were available on the work for hauling to other places where rock might be needed. Certainly it is not legitimate to infer that the defendant intended to dislodge the entire area condemned and pile the rocks elsewhere on plaintiff's land. An intent to commit a trespass on plaintiff's land is a strange inference to be drawn from the purchase of part of it. Even the able counsel for the plaintiff advanced no such theory. It was his position, and it seems to be that of the majority, that defendant is liable for the acts of his properly selected subordinates if they commit some tortious act outside of the right of way and hence outside of defendant's authority. There is no legal basis for such theory. If there were, it would upset the entire exemption of public officers from liability for the acts of their subordinates, because of course such officers are never authorized to commit torts. To permit a recovery here "would be to establish a principle which would paralyze the public service. Competent persons could not be found to fill positions of the kind, if they

knew they would be held liable for all the torts and wrongs committed by a large body of subordinates, in the discharge of duties which it would be utterly impossible for the superior officer to discharge in person." Robertson v. Sichel, 127 U. S. 507, 515, 8 S. Ct. 1286, 1290, 32 L. ed. 203.

The case of Hopkins v. Clemson Agric. College, 221 U. S. 636, 31 S. Ct. 654, 55 L. ed. 890, 35 L.R.A. (N.S.) 243, chiefly relied upon by the majority, would be in point if defendant had himself taken personal charge of the work and directed the trespass and were claiming immunity from suit. I see no application for it here. In that case the defendant corporation claimed immunity from suit as an agency of the state and entered a plea to the jurisdiction. In the case at bar defendant claims no immunity from suit. He asserts that as to a public officer the doctrine of respondeat superior does not apply, that he has committed no tort, and that there is no cause of action against him. The distinction is carefully pointed out in the opinion in the Hopkins case, and nothing is said which detracts from the views expressed by the same court in Robertson v. Sichel, 127 U. S. 507, 8 S. Ct. 1286, 32 L. ed. 203.

The defendant excepted to that part of the charge which authorized the jury to include the damages due to the careless manner in which the blasting was conducted, in consequence of which rocks were cast upon plaintiff's buildings and his windows were shattered. Doubtless the men in charge of the blasting are liable for their own negligence; but, since defendant is not charged with negligence in their selection and did not participate in the blasting or prescribe how it should be done, he is obviously not liable, and the error is prejudicial.

I think there should be judgment for defendant notwithstanding the verdict. In default of that he is entitled to a new trial.

STONE, Justice (dissenting).

I concur in the dissenting opinion of Mr. Justice Loring.