E. W. NELSON AND ANOTHER v. McKENZIE-HAGUE COMPANY.[1]

June 29, 1934.

No. 29,640.

*Drew & Cain,* for appellant.
*Ryan, Ryan & Ryan,* for respondents.

*STONE, Justice.*

In an action to recover damages for tort the jury returned a verdict for plaintiffs, husband and wife. Defendant appeals from the order denying its motion for judgment notwithstanding or a new trial.

Plaintiffs declared upon two causes of action. The recovery of the first, which declared in trespass, is not disputed and not under review on this appeal. The second cause of action stands exclusively upon the theory of nuisance. There was a verdict for $1,500, an amount concededly not excessive. Defendant's claim that as matter of law it is not liable raises the only question for decision.

The case is here upon a bill of exceptions. By their candor and mutual accommodation in so abridging the record counsel have saved expense for their clients and have aided us in our task of review. Their example is commended to the attention of the bar generally.

Defendant in 1931 and 1932, under contract with the state made through the state highway department, constructed a bridge to carry trunk highway No. 2 over the Mississippi river at Brainerd. Having previously deeded one lot to the state, plaintiffs, during the construction of this bridge, owned and had their dwelling on three lots adjoining the river and the highway. Properly to perform its contract, it was necessary for defendant to blast solid rock and use pile drivers and other ponderous and noise-making machinery. Plaintiffs' dwelling, which during part of the period of construction was within 40 feet of some of the blasting operations but later moved to a more distant point on plaintiffs' land, was substantially damaged by the vibrations. The comfort of plaintiffs and their family and their quiet enjoyment of their property was much interfered with. As stated before, there is no claim, in the cause of action now under review, that defendant was guilty of any

182

negligence or trespass. The only hypothesis now properly advanced to support liability is that of nuisance.

■ The argument that defendant was guilty of a private nuisance under 2 Mason Minn. St. 1927, § 9580, ignores the fact that it was proceeding in a lawful manner to perform a duty owing to the sovereign state. As far as it relies upon the statute, the argument for plaintiffs ignores "the settled rule of construction that the sovereign authority of the country is not bound by the words of a statute unless named therein, if the statute tends to restrain or diminish the powers, rights, or interests of the sovereign." U. S. v. Herron, 87 U. S. 251, 255, 22 L. ed. 275; Academy of Fine Arts v. Philadelphia County, 22 Pa. 496.

While that rule was born of common law notions of kingly prerogative, the reason for applying it in our representative government is equally cogent, for so applied it has the "same ground of expediency and public convenience." 25 R. C. L. 784; 59 C. J. 1121; Commonwealth v. Baldwin, 1 Watts (Pa.) 54, 26 Am. D. 33; People v. Herkimer, 4 Cowen (N. Y.) 345, 15 Am. D. 379 (Anno. 380) ; State ex rel. Davis v. Love, 99 Fla. 333, 126 So. 374. In U. S. v. Hoar, 2 Mason, 311, 314, Mr. Justice Story in discussing this question said:

"But independently of any doctrine founded on the notion of prerogative, the same construction of statutes of this sort ought to prevail, founded upon the legislative intention. Where the government is not expressly or by necessary implication included, it ought to be clear from the nature of the mischiefs to be redressed, or the language used, that the government itself was in contemplation of the legislature, before a court of law would be authorized to put such an interpretation upon any statute. In general, acts of the legislature are meant to regulate and direct the acts and rights of citizens; and in most cases the reasoning applicable to them applies with very different, and often contrary force to the government itself. It appears to me, therefore, to be a safe rule, founded in the principles of the common law, that the general words of a statute ought not to include the government, or affect its rights, unless that construction be clear and indisputable upon the text of the act."

See also State v. City of Milwaukee, 145 Wis. 131, 129 N. W. 1101, annotated in 22 Am. & Eng. Ann. Cas. (Ann. Cas. 1912A) 1212, at p. 1214.

As a practical matter and inescapably, almost every large public work must necessarily be done in a manner to create a nuisance within the meaning of the statute (2 Mason Minn. St. 1927, § 9580) if it is applicable, where persons happen to reside close to the work. There is the constant noise of heavy machinery. Frequently, and wherever solid rock is encountered in excavation, there is not only the noise of blasting but also vibrations in the ground which may reach to great distances and be very annoying to occupants of buildings within its reach. If perchance conditions require work to go on in the nighttime, as they did here, the annoyance is greatly aggravated and in a nonlegal but very real sense much of a nuisance. If the private nuisance statute is applicable to such situations, it must be held in consequence in every such case not only that a nuisance has been created but also that the state itself is the real tortfeasor. Moreover, on that hypothesis, every public work would be subject to injunction, which would result in great inconvenience and expense to the public at large. Finally, all officers and other agents of the state engaged in the work, including the laborers, would be by the state caused to be tortfeasors. It would be manifestly unthinkable that the statute was intended to bring about any such absurd result even though the general rule of construction above referred to had never been heard of.

This is no case of mere legal authorization by the state. Our state highways are built by the state itself, in its capacity as a sovereign. Their construction is not merely authorized; it is directed. The highway commissioner is the agent of the state for that purpose. Mandatory is his duty to construct roads and the bridges necessary to make them complete. Once he has contracted for their construction, it is the legal duty of the contractor to perform his contract. Such a contract makes the contractor the agent of the state and clothes him with something more than mere authority to proceed. It puts upon him the legal duty to do so. How, then, so long as he is guilty of no negligence or trespass, does he commit

a legal wrong in performing, in the only way it can be performed, the affirmative duty he owes the state?

If, perchance, doing the work in the only way it can be done results in consequential damage to third persons, there is of course fault—a misfeasance. But it is that of the state in not providing compensation for the damage before instituting the work. The making of such compensation is not the duty of the contractor. Upon what basis, then, can we hold him liable in damages for an obligation which neither legally nor morally is his, but is solely that of the sovereign state?

If the contractor in such case is to be held liable for consequential damages, it must follow, irresistibly, that the highway commissioner is equally so. But the latter result we have definitely negatived.

"It is well settled that an officer charged with the performance of such duties [as those of the highway commissioner] is not personally liable * * * for acts done within the scope of his authority, unless it appears that the particular acts complained of were not only unnecessary but were done corruptly or maliciously." Wilbrecht v. Babcock, 179 Minn. 263, 264, 228 N. W. 916.

That does not exclude liability for an independent wrong such as negligence or trespass. Nelson v. Babcock, 188 Minn. 584, 248 N. W. 49, 90 A. L. R. 1472. But no such tort is now charged against the present defendant, who was proceeding with the performance of a lawful contract, an obligation to the sovereign state lawfully imposed upon it.

The authorities are in hopeless conflict. 1 Street, Foundations of Legal Liability, 44. But there appears what seems to us a logical and compelling theory of decision. Before we can hold against defendant we must find him guilty of a wrong—a breach of some duty which *he* owed plaintiffs. The precise point of law was determined against plaintiffs by the Supreme Court of the United States in Northern Transportation Co. v. City of Chicago, 99 U. S. 635, 25 L. ed. 336, where there had been damaging interference with the plaintiff's property by the defendant in the con-

struction of a tunnel for the city. The argument for the plaintiff was [99 U. S. 640] "that though the city had the legal right to construct the tunnel, and to do what was necessary for its construction, subject to the condition that in doing the work there should be no unnecessary interference with private property, yet it was liable to make compensation for the consequential damages caused to persons specially injured."

The argument so summarized by the court was thus refuted by it [99 U. S. 641]:

"It is undeniable that in making the improvement of which the plaintiffs complain the city was the agent of the state, and performing a public duty imposed upon it by the legislature; and that persons appointed or authorized by law to make or improve a highway are not answerable for consequential damages, if they act within their jurisdiction and with care and skill, is a doctrine almost universally accepted alike in England and in this country. * * * The doctrine, however it may at times appear to be at variance with natural justice, rests upon the soundest legal reason. The state holds its highways in trust for the public. Improvements made by its direction or by its authority are its acts, and the ultimate responsibility, of course, should rest upon it."

City of Chicago v. Taylor, 125 U. S. 161, 8 S. Ct. 820, 31 L. ed. 638, on similar facts, went the other way. But that result was due to the local law of Illinois, where the cause of action arose. The state constitution had been changed so that the right of eminent domain could not lawfully be exercised without compensation, not only for property actually taken but also for damage to property. The *local law* as followed by the Supreme Court of the United States had been settled in Rigney v. City of Chicago, 102 Ill. 64. The defendant city of Chicago (not its unoffending contractor) was obviously a tortfeasor in causing damage to the Taylor property without compensation first made or provided. Not being immune from suit, recovery was properly allowed against it. Our constitution (art. 1, § 13) also gives to the individual as against the state the right of compensation before his property is taken, destroyed, or

damaged. But if without compensation his property is damaged by the state through official or other agency, operating under a direct mandate from the state, the reasoning of the Supreme Court in Northern Transportation Co. v. City of Chicago, 99 U. S. 635, 25 L. ed. 336, is still valid and applies. We repeat its substance: The state holds its highways as a sovereign, in trust for its subjects. Improvements thereon are by its authority and are its acts. Hence the ultimate responsibility is that of the state alone. Its prerogative of exemption from "coercion by suit, except by its own consent," would be a nullity if it did not protect its agents improving its highways under its mandate. Therefore the remedy for consequential injuries should be sought by the injured party from the legislature. "It does not exist at common law," and certainly we have no other granting one to plaintiffs with such claims as that asserted in this action.

The distinction above made between the earlier case of Northern Transportation Co. v. City of Chicago, 99 U. S. 635, 25 L. ed. 336, and the later one of City of Chicago v. Taylor, 125 U. S. 161, 8 S. Ct. 820, 31 L. ed. 638, is of frequent application. See Dynes v. Town of Kilkenny, 153 Minn. 11, 189 N. W. 439, where we held one of our own towns responsible for consequential injuries resulting to a landowner from the construction of a highway.

We do not overlook Belknap v. Schild, 161 U. S. 10, 16 S. Ct. 443, 445, 40 L. ed. 599, holding that officers or agents of the federal government, even though acting under its order, are personally liable in an action for damages for their own infringement of a patent resulting from the work of the government. That decision recognized that public officers are liable in tort for the wrongful invasion or injury of private rights "even by authority of the United States." But in that class of cases it was stated that a sufficient defense is made if the defendant shows "that his authority was sufficient in law to protect him." How can we have more adequate authority for that purpose than a contract, to which the state is itself a party, for the doing by the contractor, as an agent of the state, of a work which it lawfully executes in its sovereign capacity?

As a practical matter, large public works are frequently and necessarily attended by incidental damage to private property which cannot be foreseen. For that reason only, compensation is not first made or provided for. In such case there is a constitutional obligation upon the state to make reparation. In the absence of a court of claims for the settlement of such cases by adjudication, it is the duty of the legislature to provide compensation where needed to make good the state's duty. It is not to be presumed that legislators any more than other public officials will fail of their duty. At every session our legislature makes many such appropriations to meet just such moral demands on its conscience and to perform just such constitutional obligations. See L. 1933, c. 427, §§ 1-98.

The subject is discussed in 1 Street, Foundations of Legal Liability, 41 *et seq.* That discerning author had this to say:

"If damages could be recovered for the doing, in a proper way, of an act which the legislature has authorized, then the person injured could also maintain an injunction, and it is a *reductio ad absurdam* [*sic*] to suppose that the legislative purpose which intends the doing of the act is thus to be defeated." (*Id.* p. 42.)

The reasoning in Benner v. Atlantic Dredging Co. 134 N. Y. 156, 157, 31 N. E. 328, 329, 17 L. R. A. 220, 30 A. S. R. 649, a case parallel to this, is convincing. Consequential damages were sought from the defendant because, under a contract with the United States, it so conducted blasting operations in the waters of Hell Gate "as to shake, jar, damage and injure" plaintiff's dwelling house some 3,000 feet distant from the operation. It is alleged that a nuisance was thereby created. Recovery was denied upon the grounds appearing in the following quotation from the opinion [134 N. Y. 161]:

"The defendant had the authority of the United States to do the work carefully, and did it within such authority. It being lawful for the sovereign to exercise its lawful power, it must follow that whatever results from its proper exercise is not unlawful, and if any injury, direct or consequential, results to the individual, he is

remediless, except so far as the sovereign gives him a remedy. The government has provided for such direct injuries as amount to a taking of private property for public use, by the constitutional provision that it must not be done without full compensation. If the present were such a case it would seem that the plaintiff's remedy would be to make the proper application to the government. The defendant having done no more than it was fully authorized to do, and which its duty to the government under the contract required it to do, would be blameless, and the government liable because of its constitutional obligation."

Care was taken to distinguish the case from those where work is [134 N. Y. 162] "prosecuted for the benefit of private ownership aided by the public grant of the privilege, as in Cogswell v. New York, N. H. & H. R. Co. 103 N. Y. 10, 8 N. E. 537, 57 Am. R. 701," so that "the rules applicable to public grants of privileges to private parties or corporations have no force." Commenting further, the court said [134 N. Y. 162]:

"One cannot confine the vibration of the earth within inclosed limits, and hence it must follow that if in any given case they are rightfully caused, their extension to their ultimate and natural limits cannot be unlawful, and the consequential injury, if any, must be remediless. The defendant had the authority of the government and kept within it, and, therefore, is not liable."

While expediency should not control decision, it is nevertheless the duty of judges, wherever possible, to avoid judgments which must result in serious disturbance of the state's conduct of important affairs. It goes without saying that if defendant is liable as for a nuisance, the plaintiffs would have been entitled to an injunction stopping the whole work of building the Brainerd bridge until they were paid compensation for the damage that would result. And any property owner similarly circumstanced in respect to a public improvement might, at any time, stop it upon sufficient showing of consequential injury, thereby interrupting and delaying public activities of great consequence. To say that the officer or agent, after paying a judgment against him, is the one to appeal

to the conscience of the legislature rather than the property owner who has been damaged, overlooks the fact that the only real wrongdoer is the state itself and that the victim of that wrong is the one to seek relief from the wrongdoer. What foundation there is for first imposing liability upon an innocent officer or contractor and then suggesting that the state reimburse him we cannot see. That the state itself may have proceeded wrongfully in not foreseeing the consequential damage to plaintiffs' property and making provision for its compensation supports not at all the conclusion that either the highway commissioner or defendant has committed wrong in proceeding with the work in the only way it could be done. Having committed no wrong, defendant should not be subjected to liability. It is not saved by the state's immunity from suit, but by its own innocence of wrongful acts resulting in liability as for tort.

The order must be reversed with direction to enter judgment for defendant on plaintiffs' second cause of action, which seeks damages on the theory of nuisance.

Reversed.

*DEVANEY, Chief Justice* (dissenting).

I respectfully dissent. There can be no question but that defendant's actions constituted a nuisance. We are precluded from taking any other view by our statute, 2 Mason Minn. St. 1927, § 9580, which provides:

"Anything which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance. An action may be brought by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance, and by the judgment the nuisance may be enjoined or abated, as well as damages recovered."

Undoubtedly defendant's actions in breaking windows, cracking the walls and foundation of plaintiffs' house, etc., obstructed plaintiffs in the "free use" and "comfortable enjoyment" of their property. Such obstruction of the use and enjoyment of property con-

stituted a legal nuisance. Negligence is not the gist of an action to abate, or to recover damages caused by, a nuisance. It is settled that one may be guilty of maintaining a nuisance even though he be free from negligence and is exercising all due care. Brede v. Minnesota C. S. Co. 143 Minn. 374, 173 N. W. 805, 6 A. L. R. 1092; Millett v. Minnesota C. S. Co. 145 Minn. 475, 177 N. W. 641, 179 N. W. 682; 9 Minn. L. Rev. 290. Consequently, the fact that this defendant used all due care in constructing the bridge is immaterial to a determination of the fact that it was guilty of maintaining a nuisance.

Next, it becomes important to determine whether this was a public or a private nuisance in order to determine whether as to these plaintiffs it was an actionable nuisance. I think defendant's acts clearly were a private nuisance as to these plaintiffs. There is no question but that plaintiffs suffered special injury in that their house was seriously damaged. As a general rule where one suffers special injury the nuisance as to him is a private one. Defendant admits its operations interfered with the quiet enjoyment and free use of plaintiffs' property. Without attempting to distinguish in detail between private and public nuisances or to state when the same act may be both, it is clear to me that as to these plaintiffs this was a private nuisance because it specially injured them.

Since defendant was guilty of maintaining a private nuisance it cannot claim immunity from liability because its actions were authorized by the state.

"While it is true, as a general proposition, that what is authorized to be done by law cannot be a public nuisance, yet it may be a private nuisance as to individuals who are specifically injured thereby." Romer v. St. Paul City Ry. Co. 75 Minn. 211, 218, 77 N. W. 825, 826, 74 A. S. R. 455.

In Bowers v. Mississippi R. R. B. Co. 78 Minn. 398, 81 N. W. 208, 210, 79 A. S. R. 395, the defendant in the exercise of its charter powers as a corporation erected certain piling on the river which caused the washing away of part of plaintiff's land. Defendant there attempted to avoid liability for the maintenance of the nui-

sance on the ground that its act was authorized by law. The court said (78 Minn. 404):

"All these facts may be conceded, and still the act of defendant in maintaining the piling be a continuing nuisance as to the plaintiff. The obstruction was lawful as to the public, but the legislature could not authorize the defendant to maintain it as against a private party whom it injured."

Under these Minnesota decisions it becomes apparent in the case at bar that since defendant was maintaining a private nuisance as to these plaintiffs, it is not relieved from liability merely because its maintenance was authorized by the state. If this were a public nuisance it could be abated only by the public and not by a private individual. Hence authorization by the state would be a defense. But, being a private nuisance, it may be abated or damages may be recovered for its maintenance by the party whom it aggrieves, the plaintiffs here.

In general, there are three types of tort injury which form three bases for the imposition of liability: (1) Negligent injuries, i. e. failure to use due care; (2) wilful injuries, i. e. generally trespass, assault, etc.; and (3) injuries that are not necessarily either wilful or negligent but impose liability nevertheless, i. e. nuisance. In my opinion, if defendant's actions in constructing this bridge fell within any one of these three classes, it was liable. Here its actions constituted a private nuisance. Therefore it should be made to respond in damages.

It is argued that statutes such as this nuisance statute (2 Mason Minn. St. 1927, § 9580, above quoted) do not apply as against the state where the state is not specifically mentioned therein and hence that defendant here is not liable. This argument is irrelevant and misses the point for the reason that defendant here is not the state. If it were guilty of a trespass or of a negligent act, to plaintiffs' damage, it would not be the state. All admit that. Why, then, is it the state when it is guilty of maintaining a nuisance and not the state when it is guilty of trespass or negligence?

The argument that it is a hardship to compel defendant to respond in damages when it was doing merely what its contract with

the state required is poor and unavailing. In entering into this contract defendant knew or should have known the effect the use of explosives and ponderous machinery would have on adjoining premises. Any contractor of experience and ability would so know. It should then have made provision against such possibility in the contract just as it commonly makes provision in the contract against many other contingencies. The mere fact that defendant either had to breach its contract with the state or be guilty of maintaining a nuisance if it continued is not a sufficient ground for relieving defendant of liability. It should not have made such a contract. Hardship of this kind generally is not a basis for relieving a person of liability where the contingency could have been provided against in advance.

It is admitted in the majority opinion that while an officer such as a highway commissioner is not personally liable for acts done within the scope of his authority (Wilbrecht v. Babcock, 179 Minn. 263, 228 N. W. 916) yet he may be liable for trespass or negligence (Nelson v. Babcock, 188 Minn. 584, 248 N. W. 49, 90 A. L. R. 1472). Nuisance is merely another type of tort injury; and if such a person is liable for the tort of trespass or negligence, why not for nuisance? The authorities are in hopeless conflict, and a review of them would accomplish nothing. The leading cases are pointed out in the majority opinion.

Despite what is said in the majority opinion, I believe that there is no presumption that the legislature will compensate plaintiffs here. If there were such a presumption, it in no way aids in reaching a result. If there were a presumption that the legislature will do its duty and compensate plaintiffs, similarly, there is a presumption that if defendant is held liable in this action the legislature will do its duty and compensate or reimburse it. Thus, if there is a presumption at all, it works both ways. In my opinion, if we relegate plaintiffs to the legislature we avoid our duty.

I. M. OLSEN, Justice (dissenting).

I concur in the dissent of the Chief Justice. Whether the wrong here complained of be called a nuisance or a trespass seems to me unimportant. A trespass may be such as to constitute a private

nuisance. The damage here was damage to real property, to plaintiffs' home. Neither the state nor any of its agencies may damage or destroy private property for public use without compensation paid or secured. When a contractor or an agent of the state so damages private property liability follows. Nelson v. Babcock, 188 Minn. 584, 248 N. W. 49, 90 A. L. R. 1472.

