WOODIE L. JONES v. AL JOHNSON CONSTRUCTION COMPANY AND ANOTHER.
JOSE AND HARRIETT V. SHERWOOD v. SAME.
MINNEAPOLIS-ST. PAUL SANITARY DISTRICT, APPELLANT.[1]

October 24, 1941.

Nos. 32,849, 32,850.

[1]Reported in 300 N. W. 447.

124

C. E. Warner, for appellant.
Turner & Crane, for respondents.

HOLT, JUSTICE.

Actions for damages by the owners of two dwellings fronting St. Anthony avenue, in the city of St. Paul, underneath which appellant was constructing a tunnel. It was alleged that the blasting and operation of the heavy machinery used in the construction injured the dwellings. The two actions were by consent tried to the same jury, which returned separate verdicts. Appellant's blended motion for judgment *non obstante* or new trial being denied, it appeals.

The appellant was created by L. 1933, c. 341, Mason St. 1934 Supp. §§ 1607-8 to 1607-30, for the purpose of disposing of the sewage of the cities of Minneapolis and St. Paul so as not to

pollute the waters of the Mississippi River. To that end, a trunk sewer or a tunnel 19 feet in diameter was designed and constructed under St. Anthony avenue about 3,000 feet in length. Its outlet is at Pig's Eye, on the other side of the river. Its depth, below the surface in the vicinity of Chatsworth street, is about 170 feet. In June 1935 a shaft of the same diameter as the tunnel was started at the intersection of St. Anthony avenue and Chatsworth street. When finished in the summer of 1936, the construction of the tunnel proceeded both east and west from the shaft along St. Anthony avenue. The material excavated for the tunnel was pumped up through the shaft, and that needed to build the tunnel was lowered through the shaft. Appellant let the construction of the shaft to the Walter W. Magee Construction Company and the tunnel to the Al Johnson Construction Company. The latter was a party to these actions, but directed verdicts in its favor were rendered. No error is assigned in respect to this action of the court, and so appellant is now the only adversary of respondents. The Sherwood dwelling is 971 St. Anthony avenue, fronting south and located about 185 feet east of the shaft. The Jones dwelling is 979 St. Anthony avenue, and is located about 115 feet east of the shaft. In sinking the shaft, a strata of limestone nearly 25 feet thick was encountered about 100 feet below the surface. The limestone was underlaid by sandstone toward the east. It was necessary to blast the limestone. To lessen the concussion of the blasting, the dynamite sticks inserted in the many holes drilled in the top of the limestone ledge were set off or fired retardedly, that is, successively and not simultaneously. But, perhaps owing to some natural cleavage in the strata, one blast, in March 1936, went off simultaneously, severely shaking plaintiffs' buildings, and broke windows for some distance from the shaft. East of the shaft the tunnel passed through a sandstone strata, which was excavated or cut by high pressure jets of water. To the west of the shaft there was sandstone of the same nature and occasionally loose material and granite boulders, some of such size that dynamite was necessary to break them up for removal. About 270 feet

west of the shaft a shelf of limestone rock at the bottom of the tunnel necessitated blasting. Over this ledge to the west was a glacial gorge, and on November 12, 1936, about 490 feet west of the Jones dwelling or lot, some bulkhead or timbers gave way and a cave-in occurred in St. Anthony avenue, leaving a crater therein about 90 feet across and 30 feet deep. It was estimated that 2,700 cubic yards of sand and debris filled the completed part of the tunnel. It is claimed that this sudden dislocation of the soil in the street disturbed and removed the lateral support of plaintiffs' dwellings, causing the damage alleged in the complaints. It is also asserted that the blasting and the vibrations of the heavy machinery located at the Chatsworth shaft and used in the construction of the tunnel created a private nuisance by invading plaintiffs' premises, causing the buildings thereon to settle unevenly, cracking cement floors and plastering, breaking windows, and putting doors out of plumb.

The assignments of error raise the following propositions: (1) Appellant is entitled to judgments notwithstanding the verdicts; (2) appellant is entitled to a new trial (a) on the ground that the verdicts are excessive and appear to have been given under the influence of passion or prejudice; (b) that the court erred in ruling on the admission of evidence; (c) that the court unduly aided plaintiffs' counsel in conducting the case; and (d) errors in the charge.

The right of recovery was based on trespass and the invasion of plaintiffs' premises by a nuisance damaging the structures thereon. From the evidence the jury could find that there were two unexpected occurrences in appellant's undertaking, in the vicinity of plaintiffs' premises, which affected the buildings thereon. The one was the unretarded explosion of the dynamite in the limestone strata in sinking the shaft in March 1936; the other was the cave-in on November 12, 1936. But, since a recovery is not predicated on negligence, there is no need to consider the cause of these two untoward happenings. The sinking of the shaft and the construction of the tunnel were lawful undertakings entrusted to appel-

lant. However, if plaintiffs' dwellings were injured by disturbing or withdrawing the lateral support, or by so disturbing the ground as to crack the walls and plastering or otherwise injure the same, there is liability. Appellant relies on Nelson v. McKenzie-Hague Co. 192 Minn. 180, 256 N. W. 96, 101, 97 A. L. R. 196. It is to be noted that that was a case where the state, under its sovereign authority, was constructing a trunk highway bridge, and it was held that the statute defining a private nuisance has no effect against the state, its officers and agents engaged in a lawful undertaking under its sovereign authority. It can hardly be said that appellant is so endowed. There can be no doubt that the owners of premises abutting St. Anthony avenue, where the cave-in reached into the lots and disturbed the very foundations of the houses, are entitled to recover of appellant the damages sustained. And, as stated by Mr. Justice Olsen in his dissent in Nelson v. McKenzie-Hague Co. [192 Minn. 192], whether the wrong complained of be called a nuisance or a trespass is unimportant. "A trespass may be such as to constitute a private nuisance. The damage here was damage to real property, to plaintiffs' home." We think there is evidence from which the jury could find that both the blasting and the cave-in caused the ground to crack and the dwellings in question to settle unevenly, with disastrous results to windows, doors, plumbing, and floors. Hence appellant was not entitled to directed verdicts nor to judgments *non obstante.*

The claim that the verdicts are excessive and given under the influence of passion or prejudice appears to us to be worthy of the most consideration. Sherwood's dwelling was built in 1907 or 1908, and was bought by him in 1912 for $3,500. He estimated the value before the shaft was started at $6,000, and after the damage was done at $3,000. Jones estimated his property worth $4,500 before the injury and $2,500 in its present condition. No other evidence was offered by either owner as to damages. It appears that they brought contractors to these buildings to view the damages caused by appellant's work but did not call them as witnesses. Appellant called a qualified building contractor who

128

had visited the buildings and to whom the plaintiffs pointed out where damage had been done. He estimated that the damage caused to the Sherwood home could be repaired for $400 and to the Jones home for less than $300. There was no testimony offered by plaintiffs to dispute these estimates. The verdict for Sherwood was $1,525 and for Jones $1,100. The trial court deemed them generous, but not affected by passion or prejudice.

Among the exhibits are photographs of plaintiffs' dwellings introduced by them. None of the damages claimed can be detected from looking at the photographs. Plaintiffs occupied these dwellings as their homes while the shaft and tunnel were constructed and up to the trial in May 1940 without any repairs thereto other than reinforcing some splintered or cracked posts and joists in the basements. The cost thereof and of the broken glass in the windows was not shown. The damage wrought to plaintiffs' premises by this trespass or invading nuisance appears to be more of a temporary than a permanent nature. No soil was withdrawn from the lots. It was disturbed so as to affect the structures thereon injuriously. The trespass or temporary nuisance inflicted was not intentional. Plaintiffs' counsel justly realized that persons living adjacent to streets under which such vast and needful improvements are being made must put up with certain personal annoyances and inconvenience, for he stated in open court that no recovery was sought for these. For temporary injury caused by unintentional trespass or private nuisance, the cost of restoration rather than the difference in market value before and after is the proper measure of damages. 6 Dunnell, Dig. & Supp. § 9694. The verdicts, in our opinion, are too large, even though there is nothing to indicate that passion or prejudice influenced the jury. There should be a new trial as to damages only unless the plaintiffs, on the remittitur going down, file written consents to a reduction of the Sherwood verdict to $1,000, and the Jones verdict to $700.

In the rulings upon the objections to questions calling for the opinion of the witness Reed, we are of the opinion that appellant

was not prejudiced. The witness was an engineer with many years' practical experience in construction work where a good deal of blasting was necessary. It is true that appellant's enterprise, the construction of the sewage disposal plant, was not shown to be "ultrahazardous," and the objection to the question propounded to Mr. Reed, whether 50 pounds of dynamite exploded at one time (the unretarded blast in March 1936) was or was not ultrahazardous, might well have been sustained. But it is not perceived that the answer harmed appellant. The jury well understood that the blast in question was a mishap.

The misconduct assigned against the trial court does not appear to us as of sufficient merit to discuss. It is the duty of the court to so guide the trial that the evidence received is confined to the issues in controversy. We do not think the trial court in this instance overstepped propriety, even though the zeal to enlighten the jury seems pronounced.

There is an assignment of error to the charge of the court. In the motion for new trial, over four printed pages were challenged as erroneous. Some parts have now been eliminated, but two printed pages are now covered by the one assignment. These two pages consist of seven separate portions or parts of the charge. No particular sentence or paragraph is pointed out as legally incorrect. The objection mostly presented by the brief is that the evidence was not such as to make the instruction applicable. We think it was. There was testimony as to the effect of the blasting on plaintiffs' dwellings, the breaking of windows, cracking of the basement cement floors, the unevenness produced therein, throwing doors out of plumb, and affecting the plumbing. This could well be found to be a nuisance, and actionable, insofar as it reached and damaged plaintiffs' dwellings by the blasting. It is true that the complaints were not artistically drawn; but the whole trial was directed toward a recovery for trespass or the invasion of plaintiffs' premises by a nuisance disastrously affecting their dwellings thereon. Had blasting caused stones to be cast against plaintiffs' buildings, breaking windows or causing other damage

thereto, there could be little doubt of liability. It would seem that if by blasting or other means the ground supporting the buildings was so shaken or disturbed that like injury resulted, liability would follow. There is nothing in the charge, now assigned as erroneous, upon which this court can grant a new trial.

However, we think there should be a new trial as to damages only, unless plaintiffs, within ten days after remittitur, file in the court below written consent to a reduction of the Sherwood verdict to $1,000, and of the Jones verdict to $700. Upon such consent being filed, the orders appealed from will stand affirmed.

Affirmed conditionally.

[1]Reported in 300 N. W. 441.